Sandria F. **WALKER**, Plaintiff,

v.

**WAL–MART STORES, INC.,** Defendant.

Civil Action No. 3:97–CV–25WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 31, 1998.

James W. Kitchens, Kitchens & Ellis, Jackson, MS, Philip Bohrer, Koederitz & Bohrer, Baton Rouge, LA, Kathryn N. Nester, Kathryn N. Nester, Attorney, Jackson, MS, for Sandria F. Walker.

William O. Luckett, Jr., Luckett Law Firm, Clarksdale, MS, for Wal–Mart Stores, Inc.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court are the motions of both plaintiff and defendant for summary judgment brought pursuant to the Federal Rules of Civil Procedure, Rules 56(a)[1] and (b),[2] respectively. Plaintiff here is Sandria F. Walker, a former employee of Wal–Mart Stores, Inc., ("Wal–Mart"), and a participant in Wal–Mart's self-funded employee welfare benefit plan ("Plan"). As named in the style of the pleadings, defendant in the instant case is Wal–Mart Stores, Inc.; however, the parties agree and stipulate that the proper party defendant to this action is the Wal–Mart Associates Group Health Plan. In this declaratory judgment action,[3] plaintiff asks this court to determine how settlement proceeds received by her from a third-party tortfeasor in a dental malpractice case should be distributed among three (3) claimants: plaintiff; plaintiff's attorney, Philip Bohrer; and the Plan. The material facts here are not in dispute and the parties have stipulated to the pertinent facts relating to the issues raised in this motion. Therefore, pursuant to Rule 56(c),[4] Federal Rules of Civil Procedure, this court is in a posture to rule as a matter of law. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The key questions here are first, whether the Plan's language unambiguously speaks to this dispute and sufficiently provides for the distribution of settlement proceeds of the type paid in this case; and, secondly, however the court resolves the first interrogatory, whether plaintiff's attorney is entitled to deduct his fees and expenses prior to the Plan being reimbursed under its contract of reimbursement with plaintiff. Finding that the language of the Plan is both unambiguous and broad enough to encompass the dispute herein, this court holds that under the plain language of the Plan, the Plan must be reimbursed dollar for dollar prior to any distribution of settlement proceeds to either plaintiff or her attorney.

## I. *Facts*

The parties have filed the following Stipulation of Facts:

"1. On January 25, 1990, plaintiff Sandria F. Walker was employed by defendant Wal–Mart Stores, Inc.

2. Beginning January 18, 1990, and ending January 25, 1990, plaintiff underwent dental treatment by Dr. Van R. Simmons. Plaintiff alleged that Dr. Simmons committed malpractice, which resulted in her undergoing TMJ treatment.

3. Plaintiff instituted suit against Dr. Van R. Simmons on the 7th day of January, 1992, in the Circuit Court of Pike County, Mississippi, in the matter entitled "Sandria F. Walker v. Vann [sic] R. Simmons, DMD, et al.," Cause No. 5215.

---

1. Rule 56(a) of the Federal Rules of Civil Procedure provides:

    (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

2. Rule 56(b) of the Federal Rules of Civil Procedure provides:

    (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

3. Plaintiff filed her complaint for declaratory relief pursuant to Title 28 U.S.C. § 2201, which states that "[i]n a case of actual controversy within its jurisdiction, [with certain exception not applicable here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"; and Fed.R.Civ.P. 57, stating that declaratory judgments may be sought despite the existence of other adequate remedy.

4. Rule 56(c) provides in pertinent part:

    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

4. Dr. Van R. Simmons answered the suit, denying that he committed malpractice.

5. Wal–Mart Associates Group Health Plan (hereinafter referred to as "The Plan") intervened in Cause No. 5215, asserting its right to recover expenditures made for the medical treatment of Sandria F. Walker allegedly necessitated by Dr. Simmons' malpractice.

6. On June 19, 1996, plaintiff, Sandria F. Walker, and defendant, Van R. Simmons, D.M.D., entered into a settlement whereby Dr. Simmons agreed to pay $12,500.00 in exchange for a full release of all of plaintiff's claims in Cause No. 5215.

7. The Plan has expended the sum of $41,598.59 for Sandria F. Walker's medical treatment, in accordance with the itemization attached hereto as Exhibit "A."

8. Counsel for Sandria F. Walker, in Cause No. 5215, incurred costs of Seven Thousand Seven Hundred Eighty-eight and 60/100 ($7,788.60) Dollars in prosecuting the malpractice action, in accordance with the attached itemization, identified as Exhibit "B."

9. At the time of her medical treatment and resulting injuries, Plaintiff was a participant in the Plan. The Plan document is attached as Exhibit "C," and the Summary Plan Description (SPD) is attached as Exhibit "D."

10. Plaintiff executed a contingency fee contract, in favor of plaintiff's counsel, for the malpractice action which provided a fee of 40%. The contingency fee contract is attached as Exhibit "E."

11. The only remaining issue to be resolved by this Honorable Court is the allocation of the $12,500.00 settlement funds between plaintiff, plaintiff's counsel, and The Plan.

12. The proper party to this action is the Wal–Mart Associates Group Health Plan, rather than Wal–Mart Stores, Inc.

13. The Plan is a self-funded, employee welfare benefit plan governed by the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 100[sic], et seq.

14. Plaintiff executed a reimbursement agreement on June 30, 1991, which is attached as Exhibit "F." The exhibit also contains a blank reimbursement agreement, which is easier to read."

## II. *Law of Summary Judgment*

Summary judgment is inappropriate where there exists a genuine issue as to any material fact. *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980); *Hibernia National Bank v. Carner,* 997 F.2d 94, 97 (5th Cir.1993); *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1123 (5th Cir.1978); *A.M.R. Enterprises, Inc. v. United Postal Savings Ass'n,* 567 F.2d 1277, 1279 (5th Cir.1978); *Clark v. West Chemical Products, Inc.,* 557 F.2d 1155, 1157 (5th Cir.1977); *Meredith v. Hardy,* 554 F.2d 764, 765 (5th Cir.1977). The burden of proof falls on the party seeking summary judgment to show she is entitled to a judgment under the applicable law and material, undisputed facts. Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co.,* 606 F.2d 602 (5th Cir.1979); *Southern Distributing Co. v. Southdown, Inc.,* 574 F.2d 824 (5th Cir.1978); *Farina v. Mission Investment Trust,* 615 F.2d 1068, 1075 (5th Cir.1980); *Gossett v. Du–Ra–Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978); *Kellerman v. Askew,* 541 F.2d 1089, 1092 (5th Cir.1976). In reviewing the pleadings, depositions, answers to interrogatories, admissions, and affidavits to determine whether a genuine issue of material fact exists, a court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *See Keiser,* 614 F.2d at 410; *BAW Manufacturing Co. v. Saks Fifth Ave., Ltd.,* 547 F.2d 928, 930 (5th Cir.1977); *Kellerman,* 541 F.2d at 1092. Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party .... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### III. *An ERISA Plan*

All parties agree in their joint Stipulation of Fact that the Plan here is a self-funded, employee welfare benefit plan governed by the provisions of the Employee Retirement Income Security Act (ERISA), Title 29 U.S.C. § 1001, *et seq.* This court's jurisdiction to hear this dispute pursuant to Title 28 U.S.C. § 1331 [5] is similarly not contested by any party.

■■■ The jurisprudence relative to the interpretation of ERISA plans is clear. Unless ambiguous, the language of the employee benefit plan controls in the determination of benefits and subrogation issues. *See Sunbeam–Oster Co., Inc. Group Benefits Plan for Salaried and Non–Bargaining Hourly Employees v. Whitehurst,* 102 F.3d 1368, 1374–75 (5th Cir.1996) (the "average person" language of the plan will be assessed to determine benefits). Whether a specific benefit is due to a participant, or a duty is owed by the Plan or by a beneficiary is determined by reference to the language of the Plan itself. *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991) (where there is a conflict over benefits between a policy and the summary plan description, the plan governs). This is so because employee benefit plans are valid, enforceable contracts and as such should not be forced to pay benefits in derogation of their contractual terms. *Weir v. Federal Asset Disposition Assn.,* 123 F.3d 281, 286 (5th Cir.1997) (ERISA plans are contractual and should be interpreted as contracts to resolve any ambiguities). Where a plan is deemed ambiguous,

> [T]he ambiguity in the summary plan description must be resolved in favor of the employee and made binding against the drafter. Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship

that might result from a misleading or confusing document. Accuracy is not a lot to ask in return for the protection afforded by ERISA's preemption of state law causes of action—causes of action which threaten considerably greater liability than that allowed by ERISA.

*Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 939 (5th Cir.1993). When parties allege ambiguities,

> "courts attempt to resolve ambiguities in [the plan] by looking to the contract itself, on the theory that the parties' words best represent their intentions. Ambiguous terms are interpreted in light of other terms in the contract, and inconsistencies are resolved through standard rules of interpretation—for example, that specific terms control over general terms, or that separately negotiated terms control over standardized terms. As long as the contract as a whole is coherent, ambiguities can be resolved as a matter of law, without looking beyond the four corners of the document."

*Godchaux v. Conveying Techniques, Inc.* 846 F.2d 306, 314 n. 17 (5th Cir.1988). The Court went on to say that when "even by looking at the entire document, ambiguities cannot be resolved—the document as a whole is ambiguous. To resolve these ambiguities, a court can no longer rely solely on the language of the contract to determine the parties' intent, and must look to extrinsic or parol evidence." *Id.*

The provisions at issue in the instant case read as follows:

> The PLAN shall have, the right to reduce benefits otherwise payable by the PLAN or recover benefits previously paid by the PLAN to the extent of any and all of the following:
>
> A. Any payments resulting from a judgment or settlement, or other payment or payments, made or to be made by any person or persons considered responsible for the condition giving rise to the medical expense or by their issuers, regardless of whether the pay-

---

5. Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States."

ment is designated as payment for such damages including, but not limited to pain and/or suffering, loss of income, medical benefits or any other specified damages; or any other damages made or to be made by any person ...

## IV. *Plaintiff's Argument*

Plaintiff's argument is three-fold. First, plaintiff relies upon an equity argument. Plaintiff asserts that since she instituted the lawsuit against the third-party tortfeasor, expending both her time and precious resources, she is equitably entitled to the proceeds of the settlement. The Plan, as emphasized by plaintiff, neither financed nor participated in the lawsuit. According to plaintiff, the third-party tortfeasor, Dr. Van R. Simmons, propped her mouth too wide for an extended period of time which resulted in injury to her temporomandibular joint (TMJ). Plaintiff filed her suit against Dr. Simmons on January 7, 1992, and settled it on June 19, 1996. Plaintiff asserts that much legal work was done prior to settlement. She says that her counsel hired the services of an expert witness, made several trips to Mississippi and Louisiana and participated in extensive discovery, including the taking of eight to ten depositions. This lawsuit, says plaintiff, was settled shortly before trial. The Plan, complains plaintiff, was not involved in these proceedings, yet now it seeks to obtain the fruit of plaintiff's labors, a circumstance which, says plaintiff, is truly inequitable.

Secondly, plaintiff maintains that the language of the Plan never contemplated disputes of this type. Since the Plan is silent on the dispute *sub judice*, plaintiff says this renders the Plan ambiguous.

Thirdly, articulating a slightly different argument of ambiguity, plaintiff contends that there is no proof that the settlement sums paid were the result of any malpractice on the part of the tortfeasor. Plaintiff argues here that even if the Plan provides for its reimbursement from settlement proceeds, that such settlement proceeds must flow from some injury to plaintiff by a third-party tortfeasor.

According to plaintiff, Dr. Simmons settled with her for the cost of his defense. Further, says plaintiff, her purported evidence probably would not have supported a claim for malpractice that would have been successful at trial. *See* Memorandum of Authorities, Plaintiff, Sandria F. Walker's Motion for Summary Judgment, p. 3. Undermining her own filed claim against Dr. Simmons, plaintiff now says that medical testimony would have shown that her TMJ injury could have been caused by several factors, such as missing teeth, bruxism, and severe overbite that made her extremely predisposed to suffering TMJ injury. Thus, concludes plaintiff, "The undisputed factual evidence in this case requires this Honorable Court to find that the actions of Dr. Simmons were not the cause of the medical expenses paid for by The Plan." Memorandum of Authorities, Plaintiff, Sandria F. Walker's Motion for Summary Judgment, p. 10.

## V. *Defendant's Position*

The Plan argues that it is entitled to the right of subrogation and recovery of all amounts paid. Pointing out that the Plan expended the sum of $41,498.59 for plaintiff's medical treatment, the Plan contends that it is entitled to the entire $12,500.00 settlement, to the exclusion of plaintiff and her counsel's legal fees and expenses incurred in the prosecution of the malpractice claim.

The Plan bases its entitlement upon the express language of the Plan itself. According to defendant, this unambiguous language gives the Plan the right to recover benefits that it has previously paid to the extent of any payments resulting from settlement, no matter how the parties choose to designate those payments. Plaintiff, says defendant, expressly agreed by contract to repay the Plan for medical expenses the Plan paid on her behalf, without qualification. Defendant additionally points out that plaintiff also signed a Reimbursement Agreement [6] to the same effect. The unequivocal language of

---

6. As a condition for plaintiff to receive payment for her medical expenses under the plan, she executed an agreement whereby she promised to repay the plan out of any settlement or judgment received for any claim which may arise out of her injury.

the Plan and that of the Reimbursement Agreement, says defendant, mandates that the Plan recover its lien from any settlement plaintiff receives. Plaintiff's equity argument and ambiguity argument, says defendant, are negated respectively by the court's obligation to enforce the language of ERISA plans as written and by the plain, readable language of the Plan itself.

### IV. *Holding*

■ As stated above, three parties claim entitlement to the $12,500.00 settlement proceeds: the plaintiff; her attorney; and the Plan. Since the Plan expended the sum of $41,598.59 for plaintiff's medical treatment, if the Plan is reimbursed dollar for dollar, then the Plan will claim the entirety of the $12,-500.00 and leave no sums for plaintiff and her attorney. Plaintiff's attorney claims that he has expended costs and expenses in the amount of $7,788.60 in prosecuting the malpractice action. He further claims that he is entitled under his contingency fee contract to a fee of 40% which comes to $5,000.00. Obviously, this contingency fee plus the amount of expenses add up to more than $12,500.00. Thus, should this court determine that the request of plaintiff's counsel has priority, no sums would be left for either plaintiff or the Plan.

Plaintiff acknowledges her indebtedness to her attorney and agrees with her attorney that before she can claim any sums for herself, she must first satisfy the claims of her attorney. Should her attorney be fully compensated, plaintiff understands that "there [will be] no net recovery to her from which The Plan can assert its lien." Memorandum of Authorities, Plaintiff, Sandria F. Walker's Motion for Summary Judgment, p. 10.

This court is persuaded by the argument submitted by the Plan and holds that the Plan's language unambiguously declares that the Plan be reimbursed dollar for dollar up to its expended sums for plaintiff's medical expenses. Since the Plan's expenditures exceeded the amount of plaintiff's settlement, the Plan is entitled to the entire $12,500.00.

This court has scrutinized the language of the Plan pursuant to the directives contained in the case of *Whitehurst,* 102 F.3d at 1368. In *Whitehurst,* the Court held that a "Plan's reimbursement and subrogation provisions must be read in the statutory context of ERISA and, more particularly, in the precise textual context in which they appear." *Id.* at 1374. By "statutory context of ERISA," the Court means the Congressional requirement that summary plan descriptions, under ERISA, must be 'written in a manner calculated to be understood by the average plan participant.'" *Id.,* citing Title 29 U.S.C. § 1022(a)(1). Therefore, when considering whether a reimbursement provision of a summary plan description speaks sufficiently to the topic of priority and the prospect of set-off, this court will not "penalize the Plan, or other similar ERISA plans for that matter, for lack of technical precision or verbosity by labeling the Plan 'silent' or 'ambiguous' when it uses the kind of direct, jargon-free language that is mandated by ERISA for all summary plan descriptions and does not expressly address every conceivable factual variation of recovery . . . ." *Id.* at 1375.

The reimbursement portion of the summary plan description includes the following language:

> The PLAN shall have the right to reduce benefits otherwise payable by the PLAN or recover benefits previously paid by the PLAN to the extent of any and all of the following: (A) Any payment resulting from a judgment or settlement, or other payment or payments, made or to be made by any person or persons considered responsible for the condition giving rise to the medical expense . . . ."

The reimbursement provision of the Plan is clear: it provides for recovery of "any and all" payments made to plaintiff. This "any and all" language plainly means the first dollar of recovery (any) and 100% recovery (all) funds received by plaintiff in settlement. Plaintiff, a participant in the Plan, agreed by contract to repay the Plan for medical expenses the Plan paid on her behalf. As earlier stated, she also signed a Reimbursement Agreement to that same effect.

■ The Plan's unambiguous language does not include any provision for reduction of its subrogation lien for payment of attorney fees or costs. To allow such, this court

would have to write in that provision, a circumstance clearly forbidden by the jurisprudence of ERISA.

For support of her theory that the Plan should shoulder some of the legal fee burden, the plaintiff relies on *National Employee Benefit Trust of the Associated General Contractors of America v. Sullivan*, 940 F.Supp. 956 (W.D.La.1996). According to plaintiff, *Sullivan* stands for the proposition that an ERISA plan should reduce its recovery by one third for its share of the plaintiff's attorney fees. In 1991, Sullivan sustained injuries in an automobile accident and received medical treatment for the same. *Id.* at 958. Her ERISA-defined employee welfare benefit plan paid her medical expenses contingent upon her agreement to reimburse the Plan for "any amounts previously paid to [her] by the Plan." *Id.* Sullivan subsequently received a settlement closely approximating the amount of medical expenses incurred by the Plan on her behalf. When Sullivan refused to repay the Plan for its expenditures on her behalf, the Plan filed a declaratory judgment action to determine priority in reimbursement. *Id.* Sullivan urged the court, on several theories, to relieve her of her obligation to reimburse the Plan. *Id.* at 959. However, the Court found that the right of the Plan to be reimbursed was clearly intended when the parties initially agreed to coverage. *Id.*

The plaintiff in the instant case relies on the last clause of the last sentence of *Sullivan*, where the Court subtracted one-third of the reimbursement of the Plan to cover the attorney fees Sullivan incurred in prosecuting her claim which resulted in the settlement. *Id.* However, the Court in *Sullivan* provided no authority or reasoning for imposing this set-off for attorney fees, and, therefore, this court is unpersuaded by plaintiff's reliance on *Sullivan*.

Plaintiff here further bases her argument for the apportioning of attorney fees upon the reasoning that the Plan is silent on the distribution issue and, therefore, that equitable considerations should mandate reduction of the Plan's recovery. However, the Fifth Circuit has held that silence in an ERISA summary plan description shall not be construed as ambiguity necessitating creation of default rules of interpretation. *Sunbeam–Oster*, 102 F.3d at 1375–76. The Court held that silence, in the context of ERISA summary plan descriptions (Congressionally mandated to be written in easy-to-understand language) is merely an indication that the rule is the same for all situations. *Id.* at 1376.

Therefore, the plaintiff's arguments urging the court to set-off her attorney fees against the Plan's recovery must fail under a plain reading of the language of the reimbursement provision, as interpreted under the guidance of the Fifth Circuit's ruling in *Sunbeam–Oster*. The court does not find persuasive the plaintiff's reliance on the unexplained imposition of one-third set-off in *Sullivan*, nor her exhortations on behalf of equitable principles over a plain reading of the agreement. The Fifth Circuit in *Sunbeam–Oster* held, as does this court, that the plain language of the agreement controls. "That judges and lawyers, who by education and experience are primed to discover ambiguity in contract language, might find gaps or contradictions in a summary plan description's ordinary, conversational language does not mean that the language is necessarily ambiguous or silent to the point of default for ERISA purposes." *Id.* at 1376.

Nor is this court impressed with plaintiff's "make whole" argument. According to plaintiff, the Fifth Circuit in *Sunbeam–Oster* left open the possible adoption of the "make whole" doctrine as the default rule in cases of ambiguous language. Plaintiff cites two cases in other Circuits where the Courts have adopted such a doctrine. *See, e.g., Barnes v. Independent Automobile Dealers Association of California Health and Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir. 1995); *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir.1997).

First of all, this court has held that the language of the Plan sub judice is not ambiguous and, thus, not in need of a default rule. The plain, unambiguous language of the Plan at issue here clearly mandates the priority of the Plan's reimbursement.

Secondly, relative to plaintiff's contention that the Fifth Circuit has left ajar the door

for later adoption of the "make whole" doctrine, plaintiff apparently ignored the following discussion in *Sunbeam–Oster:*

> But the portion of the district court's opinion and holding that gives us the most serious concern is that court's admittedly res nova selection of the Make Whole rule as the appropriate default rule of construction for interpreting an ERISA plan's reimbursement and subrogation rights .... [W]e have serious doubts whether we would ever approve or adopt the Make Whole rule as this circuit's default rule for the priority of recovery in reimbursement or subrogation between an ERISA plan and its participant or beneficiary under circumstances such as the ones we consider today.

*Id.* at 1377–78. In *Sunbeam–Oster,* the Court held that the language of the ERISA plan was unambiguous and, therefore, not in need of any default rule. It was only out of an abundance of caution that the Court went on to explain that, in no way, should its failure to rule on the "make whole" rule be viewed as an approval of its dictates. Thus, this court is unpersuaded by plaintiff's argument that the Fifth Circuit is prone to adopt the "make whole" doctrine.

Finally, in support of her motion for summary judgment and in opposition to defendant's motion for the same, plaintiff now contends that the Plan is not entitled to reimbursement because there is no proof before the court that the settlement sums at issue were the result of any negligence by the third-party tortfeasor. Plaintiff argues that a fair reading of the Plan's language shows that the Plan may recover only from settlements by "responsible parties."

Plaintiff's present characterization of her lawsuit against Dr. Simmons sharply contradicts the allegations she made against him in her complaint. In her complaint, plaintiff alleged that she sought:

> "damages for injuries inflicted upon her during a period of treatment by the defendant, Van R. Simmons, D.M.D., beginning January 18, 1990, and ending January 25, 1990, during which time she was under the care and treatment of the defendant, Van R. Simmons, D.M.D., for decay problems

with her teeth. The damages sought in this case exceed $50,000.00, exclusive of interest and costs."

Plaintiff further alleged that:

> "she was the patient of Van R. Simmons, D.M.D., and that he owed to her a duty to exercise ordinary care and diagnosis and treatment of her teeth problems. The defendant Van R. Simmons, D.M.D., failed to exercise ordinary care and that failure has proximately caused serious and grievous injuries to the plaintiff."

Now, plaintiff suggests that at trial she would not have been able to prove her lawsuit and, resultedly, that, the settlement sums do not fall within the contractual language of the Plan, because not paid by a "responsible party."

Plaintiff's argument is disingenuous. This court will not now require the Plan to litigate the alleged negligence of Dr. Simmons in order for the Plan to recover. This settlement occurred as a direct result of plaintiff's malpractice suit against Dr. Simmons. Up until the settlement, plaintiff accused Dr. Simmons of being the person responsible for her TMJ injuries. In response, Dr. Simmons paid plaintiff the $12,500.00 in settlement of all her possible claims against him. The fact that Dr. Simmons avoided a lengthy and expensive civil trial by choosing to settle plaintiff's accusation against him out of court will not now open the door for the plaintiff's claim that the settlement is outside of the scope of the reimbursement provisions. Thus, this court determines that the $12,-500.00 settlement paid by Dr. Simmons falls within the language of the Plan allowing recovery from "a settlement made ... by any person or persons considered responsible for the condition giving rise to the medical expense."

## VII. *Conclusion*

The court, having considered the briefs along with all the supporting evidence, finds the plaintiff's arguments unpersuasive. The plain language of the summary plan description is not ambiguous as interpreted under Fifth Circuit rules of construction for ERISA plans, *Sunbeam–Oster,* 102 F.3d at 1375, but rather spells out the agreement between the

parties in a clear and easy-to-understand manner as dictated by Congress. *See* Title 29 U.S.C. § 1022(a)(1). The language of the Plan, having been held to be unambiguous and not in need of interpretation by extrinsic evidence, is further found to provide for reimbursement of the Plan in situations such as the case at bar. The Plan's language is sufficiently clear of the parties' intent that the Plan be reimbursed dollar for dollar. Therefore, the court finds that a set-off for attorney fees was not contemplated by the parties and is not applicable.

The motion of the defendant for summary judgment is granted; the motion of the plaintiff for summary judgment is denied. The Plan is entitled to reimbursement of all medical expenses it incurred on behalf of the plaintiff, to the extent of the plaintiff's settlement recovery. This court will enter a judgment in accordance with the local rules.