**THE ADMINISTRATIVE COMMITTEE, as Administrator and Named Fiduciary of the Wal–Mart Associates' Group Health Plan, Plaintiff,**

v.

**Sarah E. KERN, A/K/A Sarah E. Dixon, Defendant.**

**No. CIV. 98–5216.**

United States District Court, W.D. Arkansas, Fayetteville Division.

Dec. 2, 1999.

W.O. Luckett, Jr., Memphis, TN, Michael R. Jones, Mountainburg, AR, for Plaintiff.

William B. Raiford, III, Merkel & Cocke, Clarksdale, MS, for Defendant.

### MEMORANDUM OPINION

H.FRANKLIN WATERS, Senior District Judge.

This case is before the court on the plaintiff's motion for summary judgment and the defendant's response thereto.

### Background.

In 1992, Sarah Dixon Kern (Kern)[1] sought the services of Dr. Samuel J. Creekmore, M.D., at the Creekmore Clinic in Union County, Mississippi, for the treatment of a chronic rash. Dr. Creekmore informed Kern that she needed to be admitted to a hospital for intravenous administration of Solumedrol, a steroid.

7. Docket No. 7.

8. Docket No. 14.

9. Docket No. 20.

1. At that time, her name was Sarah Dixon. To avoid confusion, we will refer to the defendant throughout this opinion by her current name Sarah Kern.

On March 2, 1992, Kern was admitted to the Baptist Memorial Hospital in Union County under the care of Dr. Timothy F. Thompson and Dr. Creekmore. Upon admission, Dr. Thompson ordered Solumedrol administered to Kern at the rate of 100 milligrams intravenous every six hours. The dosage continued until March 6, 1992. Kern suffered a fluid overload and congestive heart failure. She was transferred to a hospital in Memphis, Tennessee, for treatment. Later, she developed avascular necrosis necessitating replacement of both hip and both shoulder joints.

In a malpractice action filed on February 24, 1994, in the Circuit Court of Union County against Creekmore Clinic, Samuel J. Creekmore, III, M.D., Timothy Frank Thompson, M.D., and Baptist Memorial Hospital–Union City, Kern alleged that the defendants administered excessive doses of Solumedrol which caused her to go into fluid overload and congestive heart failure. She also alleged the excessive doses of Solumedrol resulted in her having to have her shoulders and hip joints replaced because of avascular necrosis.

During the relevant time frame, Kern was an employee of Wal–Mart Stores, Inc., and was covered under the Wal–Mart Stores, Inc. Associates' Health and Welfare Plan (the Plan). The Plan paid for all medical treatments incurred by Kern, $102,618.64, including treatments which may have been proximately caused by the negligence of the medical malpractice defendants. It is undisputed that the Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.

The Plan placed the medical malpractice defendants on notice of a claim of subrogation and reimbursement rights. The medical malpractice defendants on January 4, 1996, filed a motion for joinder of the Plan as a necessary and indispensable party. The circuit court granted the motion on January 8, 1996. The Plan[2] thereafter filed a complaint in joinder asserting rights of subrogation against the medical malpractice defendants.

Kern continued to prepare her case for trial. Because the Plan was a named party and had its own counsel, Kern did not undertake to prosecute the Plan's subrogation claim. The trial was scheduled for December 7, 1998. As the trial date approached, the medical malpractice defendants engaged in settlement negotiations with Kern and attempted to engage the Plan in the negotiations.

Kern and the medical malpractice defendants were able to agree upon a total settlement value. However, negotiations with the Plan were unsuccessful because the Plan, for whatever reason, would not engage in such negotiations or respond to settlement offers. In light of this, the entire case could not be resolved .until the Plan's claim was either settled or tried. For this reason, the medical malpractice defendants moved to bifurcate the trial of the Plan's subrogation claim. The motion was granted on November 30, 1998, the trial of Kern's claims against the malpractice defendants was continued, and the Plan was ordered to proceed to trial on its subrogation claim.

Thereafter, the Plan moved for voluntary dismissal of its claim without prejudice. On December 3, 1998, the circuit court granted the motion.

Kern reached a settlement with the medical malpractice defendants in the total amount of $420,000. Because of their concern the Plan would seek to assert further claims, the medical malpractice defendants filed a counterclaim in interpleader on December 16, 1998, in the action pending in the Circuit Court of Union County, Mississippi. They sought a judicial determination as to the proper recipient or recipients of the settlement funds and upon payment of the agreed upon amount an order directing Kern and the Plan not to institute any further action against the medical mal-

2. The complaint in joinder was erroneously filed in the name of Wal–Mart Stores, Inc.

practice defendants arising out of the March of 1992 treatment. As the Plan had already voluntarily dismissed its claim, the medical malpractice defendants served process on the Plan. Process was also served on Kern.

The Plan then removed the counterclaim in interpleader to the United States District Court for the Northern District of Mississippi. The Plan answered the counterclaim and asserted a cross-claim against Kern with respect to the medical expenses paid by the Plan. Kern filed a motion to remand which was granted on the grounds that Kern, a counter-defendant, had not joined in the removal. The counterclaim in interpleader and the Plan's cross-claim against Kern are now pending before the Circuit Court of Union County, Mississippi. Kern no longer lives in Mississippi.

Upon remand, the medical malpractice defendants tendered to Kern the $420,000. By agreement of the parties, $103,000 of such sum, the amount claimed by the Plan to be owed for medical expenses paid on behalf of Kern, has been placed in an interest bearing escrow account in the joint names of Kern and the Plan pending a judicial determination of their respective rights. The remaining funds were disbursed to Kern.

On December 18, 1998, the Plan, prior to answering the Mississippi counterclaim in interpleader, filed this action seeking a determination regarding its rights to reimbursement of medical expenses it paid on Kern's behalf. The Plan has now moved for summary judgment contending it is entitled to reimbursement in the total amount of $102,618.64 for its payment of the expenses arising out of the injuries caused by the Solumedrol overdose. In moving for summary judgment, the Plan relies on the following reimbursement provision contained in the Plan's 1992 summary plan description (SPD):

**RIGHT TO REDUCTION AND REIMBURSEMENT (RIGHT OF SUBROGATION)**

The Plan has the right to either reduce benefits otherwise payable by the Plan or to recover benefits previously paid by the Plan to the extent of any of the following:

*Any judgment, settlement, or other payment, made or to be made by the person(s) considered responsible for the condition giving rise to the medical expense or by their insurers.

*Any auto or recreational vehicle insurance payments or benefits including, but not limited to, uninsured motorist coverage.

*Business and homeowners medical liability insurance coverage or payments.

The Plan may request that you or your covered dependent cooperate to guarantee reimbursement to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due you under the Plan Document. You or your covered dependents may not do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.

Additionally, the Plan has the right to file suit on your behalf against any person or entity considered responsible for the condition giving rise to the medical expenses, to recover benefits paid or to be paid under the Plan.

Also, to aid the Plan in its enforcement of its right of recovery, reimbursement, and subrogation, the participant must, at the Plan's request, take any action, give information, and/or execute documents so required by the Plan, at its discretion. If a Participant fails to comply with such request(s), the Plan may withhold benefits, services, payments, or credits due under the plan.

*Plaintiff's Exhibit 1* at 28 (page D–12 of the SPD).

### Discussion.

It is undisputed that the Plan vests the administrator with discretionary authority. Accordingly, this court's review is limited to the question of whether the administra-

tor abused its discretion. Under this standard, the administrator's decision will stand unless it is without reason, unsupported by substantial evidence, or erroneous as a matter of law. *See Marolt v. Alliant Techsystems, Inc.,* 146 F.3d 617, 620 (8th Cir.1998); *Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997)(*quoting Donaho v. FMC Corp.,* 74 F.3d 894, 899 (8th Cir.1996)). *See also Solger v. Wal–Mart Stores, Inc. Associates Health and Welfare Plan,* 144 F.3d 567 (8th Cir.1998); *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994); *Finley v. Special Agents Mut. Benefit Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir.1992)(setting forth a five-factor test for evaluating the reasonableness of a decision). In determining reasonableness, the focus is on whether the decision is supported by substantial evidence.

In this case, the Plan contends that the reimbursement clause unmistakably obligates Kern, without exception, to fully reimburse the Plan from her settlement with the doctors and that it reasonably interpreted the reimbursement clause to include this obligation. In opposing the summary judgment motion, Kern raises a number of issues. First, she contends the SPDs in existence when the medical benefits were paid apply. As substantial portions of the benefits were paid in 1993 and 1994, she contends we must look to the SPD's applicable to those years. Second, Kern states that although she initially alleged the Solumedrol caused the avascular necrosis which necessitated the joint replacements, she was unable to prove this. In fact, Kern states her own experts offered the opinion that such injuries were not caused by any act or omission of Drs. Thompson or Creekmore. Kern indicates the Plan was notified of this development long before the settlement and of the fact that Kern would not pursue claims for medical expenses as a result of avascular necrosis. Thus, while Kern admits the Plan paid medical expenses totaling $102,618.64, she contends the expenses related to avascular necrosis were not caused by the medical malpractice of defendants and that the Plan is not entitled to reimbursement of those expenses.

■ The gist of Kern's argument is that the Plan, under the express language of the reimbursement provisions, is limited to seeking reimbursement of those medical expenses resulting from the conduct of Drs. Thompson and Creekmore. The court agrees. The 1992 SPD provision, relied on by the Plan, gives the Plan the right to reimbursement from any payment "made by person(s) considered **responsible for the condition giving rise to the medical expense.**" Thus, if the avascular necrosis, the condition at issue here, was not caused by the conduct of Drs. Thompson and Creekmore, the Plan is not entitled to reimbursement from the settlement funds for medical expenses it paid as a result of Kern's treatment for this condition.

The Plan argues it is not required to prove the negligence of the malpractice defendants before it can assert a valid claim to the settlement money. As a general proposition, the court agrees with this statement. *See e.g., Walker v. Wal–Mart Stores, Inc.,* 27 F.Supp.2d 699, 707 (S.D.Miss.1998), *aff'd,* 159 F.3d 938 (5th Cir.1998).

However, the Plan seeks to oversimply the issues in this case. Were Kern arguing that an ERISA Plan must always bear the burden of proving the alleged tortfeasor's fault before it could collect under a reimbursement provision, we would reject this argument out of hand. If a Plan participant prevails on a claim against a third party based on an assertion of fault either through trial or settlement, the participant cannot avoid the reimbursement provision by arguing the Plan must fend for itself. Thus in the majority of cases, the Plan need not separately prove that the tortfeasor was at fault and his or her conduct proximately caused the injuries resulting in the need for medical treatment.

■ However, where, as here, the Plan participant seeks damages for multiple

medical conditions and is forced to abandon a portion of her claim because she finds herself unable to prove the tortfeasor's fault proximately caused one of her medical conditions, in this case the avascular necrosis which resulted in the need for joint replacements, the Plan may not, without establishing a connection between the tortfeasor's conduct and the medical condition, seek reimbursement for medical expenses incurred as a result of that condition. Here, there is no evidence Kern dropped her claim that the malpractice defendants caused her avascular necrosis to avoid her reimbursement obligation. Rather, the evidence indicates she was, because of a lack of supporting evidence, forced to abandon this portion of her malpractice claim.

Kern has submitted exhibits indicating that she determined prior to the settlement that she could not recover on claims resulting from avascular necrosis. She has also submitted the affidavit of her expert physician indicating that the condition was not caused by the negligence of Drs. Thompson and Creekmore. Kern continued to pursue her claim that the malpractice defendants' negligence caused her fluid overload and her congestive heart failure. In opposing the Plan's motion, she contends Drs. Thompson and Creekmore were not, and cannot be considered, responsible for the medical expenses incurred as a result of avascular necrosis.

Kern is not arguing, as did the plaintiff in *Walker*, that the settlement funds she received from Drs. Thompson and Creekmore were not paid by a "responsible party" within the meaning of the reimbursement clause or that the Plan is not, absent application of the election of remedies and/or waiver defenses, entitled to reimbursement for any medical expenses. Nor is she taking a position inconsistent with the one she took at the time of the settlement. Rather, she is merely arguing that the Plan is only entitled to reimbursement for expenses it paid as a result of the negligent conduct of the malpractice defendants.

From the materials submitted to the court, it does not appear that the Plan administrator has considered the specific issue on which this case turns. That is, whether Drs. Thompson and Creekmore were "responsible for the condition [avascular necrosis] giving rise to the medical expense." Instead, it appears the Plan has merely totaled all medical expenses it paid on Kern's behalf after the March of 1992 hospitalization without regard to whether those expenses arose as a result of the fluid overload and congestive heart failure or as a result of the avascular necrosis. Neither party has submitted any materials indicating the Plan considered this specific issue.

Accordingly, this matter is not ready for review by the court. Instead, the administrator must first be given the opportunity to determine what portion of the $102,618.64 it believes is subject to the reimbursement provision. In making this determination, the administrator must determine whether Drs. Thompson and Creekmore were responsible for the avascular necrosis which necessitated the joint replacements.

### Conclusion.

For the reasons stated, an order will be entered administratively terminating this case. The Plan's motion for summary judgment is denied.

### ORDER

On this 2nd day of December, 1999, upon consideration of the plaintiff's motion for summary judgment, the court finds said motion should be and hereby is denied. For the reasons stated in the memorandum opinion, the court finds this case should be and hereby is stayed and administratively terminated for the plaintiff to determine what portion of the $102,618.64 in medical expenses it paid is subject to the reimbursement provision. At the conclusion of the administrative proceedings,

either party may, if necessary, file a motion to reopen the case.

IT IS SO ORDERED.