**Timothy FRANKS, and Similarly Situated Persons, Plaintiffs,**

v.

**PRUDENTIAL HEALTH CARE PLAN, INC., a Texas Corporation d/b/a Prucare; and Healthcare Recoveries, Inc., a Delaware Corporation, Defendants.**

**No. Civ.A. SA99CA1324FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 28, 2001.

866

Frank Herrera, Jr., Law Offices of
Frank Herrera, San Antonio, TX, Charles

A. Mathis, Jr., Herman, Middleton, Casey & Kitchens, Atlanta, GA, Donald M. Kresen, Gold, Khourney & Turak, L.C., Moundsville, WV, Faye R. Rosenberg, Herman Middleton Casey & Kitchens, LLP, Savannah, GA, David A. McKay, Atlanta, GA, for Timothy Patrick Franks.

Frank Herrera, Jr., Law Offices of Frank Herrera, San Antonio, TX, Charles A. Mathis, Jr., Herman, Middleton, Casey & Kitchens, Atlanta, GA, Donald M. Kresen, Gold, Khourney & Turak, L.C., Moundsville, WV, for Esteban Briones, plaintiff.

J. Hoke Peacock, III, Susman Godfrey L.L.P., Houston, TX, for Prudential Health Care Plan, Inc., Healthcare Recoveries, Inc.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION TO DISMISS

BIERY, District Judge.

This case presents issues of first impression within the Fifth Circuit, as well as issues for which there appear to be established precedents. The Court will of course abide by the judicial chain of command in those areas in which there is binding authority. In uncharted Fifth Circuit waters, this Court will seek guidance from reasonableness, common sense and non-binding precedents, and will fathom an educated prediction of what conclusion the appellate court will reach.

Plaintiff Franks was involved in an automobile accident and settled with the third-party tortfeasor. Defendant Prudential Health Care Plan, Inc. ("Prudential"), a health maintenance organization ("HMO"), requested Mr. Franks to reimburse Prudential out of his settlement proceeds the value of the medical services Prudential provided to him in relation to the accident. Mr. Franks complied with Prudential's request, but later filed suit arguing Prudential had no right to reimbursement. Mr. Franks also alleges Prudential, through its collection agent, defendant HealthCare Recoveries, Inc. ("HRI"), recovered more in reimbursement for his medical treatment than it had paid out and therefore more than it was entitled to collect

Mr. Franks contends equitable considerations run in his favor, while defendants contend it is they who possess equitable appeal. In reality, the issues presented must be resolved on legal, not equitable, grounds. Mr. Franks maintains Prudential's reimbursement practice results in a windfall to defendants as they are collecting twice: once from the member who prepaid Prudential and again from the member's tort settlement. Defendants respond it is Mr. Franks who would obtain a double recovery: once from Prudential for medical care and again from the tortfeasor with whom he settled. While the Court is sympathetic to Mr. Franks' desire to retain all the proceeds from the settlement which he negotiated with the party who injured him, contractual and precedential considerations weigh in favor of Prudential which agreed with Mr. Franks to receive the "reasonable value" of any recovery he may obtain from a third-party tortfeasor.

The First Circuit Court of Appeals has determined an HMO reimbursement clause is enforceable. *See Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 278–79 (1st Cir.2000). The Eighth Circuit Court of Appeals has upheld "reasonable value" language in an HMO subrogation provision. *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 676 (8th Cir. 1999). This Court believes the Fifth Circuit will agree with these cases. Under the dictates of judicial economy, it thus makes more sense to address these issues now and, if this Court is in error, the matter can proceed on remand. If this

Court were to decline to follow these appellate decisions, certify the class, proceed through possibly years of litigation, and the Fifth Circuit follows *Harris* and *Ince,* valuable time and resources are wasted.

Before the Court are Defendants' Renewed Motion to Dismiss (marked "Received" by the District Clerk on May 2, 2000), defendants' Memorandum of Law in Support of Defendants' Renewed Motion to Dismiss (marked "Received" by the District Clerk on May 2, 2000), plaintiff Franks' response (marked "Received" by the District Clerk on June 7, 2000), defendants' reply (marked "Received" by the District Clerk on June 21, 2000), plaintiff Franks' supplemental brief (marked "Received" by the District Clerk on June 27, 2000), the Court's October 20, 2000, Order Requesting Further Briefing from Plaintiff Franks (docket no. 42), plaintiff Franks' response (docket no. 45), defendants' response (marked "Received" by the District Clerk on December 14, 2000) and plaintiff Franks' reply to defendants' response (docket no. 47).[1] After careful consideration, the Court is of the opinion the renewed motion to dismiss should be granted in part and denied in part. Specifically, the Court is of the opinion Mr. Franks' claims, with the exception of his request for common fund attorneys' fees, should be dismissed.[2]

## I. BACKGROUND

Plaintiff Franks was enrolled in a Prudential HMO through his employer, ATC Long Distance.[3] In early 1995, Mr. Franks was involved in a traffic accident. The providers in Prudential's network furnished medical care to Mr. Franks for injuries he sustained in the accident. In 1996, Mr. Franks settled his personal injury claims with the other driver's insurance company.

Sometime thereafter, Prudential, through HRI, asked Mr. Franks to reimburse Prudential $2,074.98 out of his settlement proceeds, the value of the medical services Prudential provided to him in relation to the accident. After the settlement was finalized, Mr. Franks and his attorney complied with Prudential's request.

Prudential based its right to reimbursement upon plan documents in effect at the time of Mr. Franks' injury in early 1995, and on May 26, 1995, the date he received the last of his accident-related medical treatment. That contractual document between Prudential and Mr. Franks' employer provided that Prudential was entitled to be reimbursed "the reasonable cash value" of the medical services it provided to Mr. Franks for injuries caused by third-parties. On July 1, 1995, Prudential changed the plan documents. Under this new arrangement, Prudential remained entitled to recover the reasonable cash value of medical services from Mr. Franks' settlement, but this applies only if Mr. Franks "received any services, supplies or other benefits to which [he] is not entitled by the terms of the Group Health Care coverage and of the Group Contract."

In September of 1999, Mr. Franks filed this proposed class action alleging Prudential lacks enforceable rights of reimbursement. He also maintains Prudential re-

---

1. Accompanying motions for leave to file in excess of the page limit (docket nos. 33, 36, 38 and 46) are GRANTED. Plaintiff Franks' motion for oral argument (docket no. 37) is DENIED.

2. The proposed class has not been certified and the issue of class certification has not been addressed by the Court.

3. On August 6, 1999, Prudential was sold to Aetna, Inc. and Aetna Life Insurance Company.

covered more in reimbursement for his medical treatment than Prudential had to pay in cash for that treatment. He contends Prudential inflated its reimbursement request to him by: 1) obtaining discounts from its healthcare providers for his medical treatment, while asking him to refund Prudential for the cost of non-discounted treatment; 2) compensating some of his healthcare providers via capitation or per diem rates, while asking him to reimburse Prudential for the cash value of such medicals services; and 3) by failing to give him credit for membership fees and co-payments. Mr. Franks maintains Prudential improperly sought reimbursement from him for the amount its providers typically "bill" for their services, instead of the amount Prudential actually "paid" for them. Suit was filed in federal court with Mr. Franks seeking a declaratory judgment and alleging twenty-four claims under state and federal law. Specifically, Mr. Franks alleges the following causes of action: breach of contract (count I), breach of implied covenant of good faith and fair dealing (court II), bad faith (count III), breach of fiduciary duty (count IV), accounting (count V), unconscionability (count VI), intentional misrepresentation (count VII), misrepresentation and negligence (count VIII), wrongful conversion (count IX), unjust enrichment (count X), fraud (count XI), negligence and gross negligence (count XII), insurance code violations (count XIII), enforcement of the terms of the plan documents under section 502(A)(1)(B) of the Employee Retirement Income Security Act ("ERISA") (count XIV), breach of fiduciary duty under section 502(A)(3) of ERISA (count XV), unjust enrichment under the common-law of ERISA (count XVI), a "billed v. paid" accounting claim (count XVII), violation of the Racketeering, Influence and Corrupt Organization Act ("RICO") section 1962(a)(count XVIII), violation of RICO

section 1962(b) (Count XIX), violation of RICO section 1962(c) (count XX), violation of RICO section 1962(d) (count XXI), violation of RICO section 1962(d) (count XXII), violation of RICO section 1962(d) (count XXIII), and conspiracy to commit unfair debt collection practices violations under federal law (count XXIV).

Defendants move to dismiss under rule 12(b)(6) alleging Mr. Franks has failed to state a claim upon which relief can be granted. Defendants contend:

- Mr. Franks' claims fail because Prudential had the right to seek reimbursement for "reasonable" values.
- The terms of Mr. Franks' plan documents must be enforced as written, and Mr. Franks can demonstrate no reason for this Court to invalidate those documents.
- As an independent matter, ERISA preempts all of Mr. Franks' state law claims.
- Mr. Franks' plan defeats his claim for "common fund" attorneys' fees.

Mr. Franks maintains Prudential's documents do not defeat his claim. He also argues Prudential and HRI have no right to pursue and obtain reimbursement from plan members like himself. Alternatively, Mr. Franks contends, if Prudential can seek reimbursement, Prudential is at most entitled only to the amount it actually paid on Mr. Franks' behalf. Moreover, Mr. Franks argues ERISA does not preempt his state law claims and further states the plan does not defeat his claim for common fund attorneys' fees.

## II. STANDARD OF REVIEW

Defendants' motion to dismiss contends Mr. Franks' action should be dismissed because plan documents confer upon Prudential the "unequivocal right" to recover the reasonable value of medical treatment

from the settlement proceeds of enrollees injured by a third-party. Although Mr. Franks did not attach the plans to his complaint, he specifically asserts "Prudential's documents do not defeat Franks' claim." Defendants include as exhibits to their motion to dismiss copies of plan documents. Mr. Franks does not object to this inclusion.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint which fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A dismissal under rule 12(b)(6) is not a preferred avenue of adjudication and is looked upon with disfavor. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In considering a rule 12(b)(6) motion, two general rules must be followed. *Id.* First, all well-pleaded facts in the complaint must be accepted as true, and a complaint should be liberally construed in favor of a plaintiff. *Id.* Second, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." *Id.* The Fifth Circuit has recognized two exceptions to the general rules. Where a complaint asserts merely conclusory allegations, a court should not accept as true these conclusory statements. *Id.* Also, where a complaint shows on its face it is barred by an affirmative defense, a court may dismiss the action for failing to state a claim. *Id.*

In determining whether a complaint states a claim upon which relief may be granted, a court must not look beyond the pleadings. *See Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.*, 690 F.2d 489, 499–500 (5th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). "[U]nless the pleadings on their face reveal beyond doubt that the plaintiffs can prove no set of facts that would entitled them to relief," a 12(b)(6) dismissal is improper. *Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 591, 594 (5th Cir.1991). In addition to the complaint itself, all exhibits attached to a complaint are part of the pleadings. *See* Fed. R. Civ. P. 10(c)("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). "Therefore, when considering 'the pleadings on their face,' a court may also consider the exhibits attached to the complaint in determining whether a claim upon which relief may be granted exists." *Sheppard v. Texas Dept. of Transp.*, 158 F.R.D. 592, 595 (E.D.Tex.1994). Where an exhibit contradicts an assertion made in the complaint and eliminates any possible claim for relief, dismissal is appropriate. *See Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974); *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir.), *cert. denied,* 311 U.S. 685, 61 S.Ct. 63, 85 L.Ed. 442 (1940).

■ As noted, a court should only consider the pleadings when deciding a rule 12(b)(6) motion to dismiss. When a court considers matters outside the pleadings, rule 12(b) requires the court "to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56." *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). Nonetheless, there are narrow exceptions to this mandate. One such exception allows a court, under certain circumstances, to consider exhibits attached to a defendant's motion to dismiss.[4] *See Shep-*

---

4. A main factor in directing courts to look solely toward the pleadings when deciding a

rule 12(b)(6) motion is the concern that statements outside of the complaint will not pro-

*pard,* 158 F.R.D. at 595. This exception appears an extension of the concept set forth in rule 10(c). *Id.* A plaintiff is under no obligation to include pertinent documents as exhibits to his complaint. *Id.* (citing 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: Civil 2d § 1327 p. 762). "Thus, when a plaintiff does not attach a pertinent document to the complaint and the document contradicts the complaint, a 'defendant may introduce the exhibit as part of his motion attacking the pleading'." *Id.* (quoting 5 WRIGHT & MILLER, § 1327 p. 762–63). Several circuits have held that documents which a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to his claim. *See e.g., Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *Venture Assocs. v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir. 1993); *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). In a recent opinion, the Fifth Circuit explicitly recognized a court may consider documents attached not only to the pleadings, but to the motion to dismiss under rule 12(b)(6). *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir.2000). For this exception to apply, the documents must be referred to by the complaint and be integral and central to the plaintiff's claim. *Id.* at 499 (quoting *Venture Assocs.,* 987 F.2d at 431).

Here, the plan documents relied upon are specifically referenced in Mr. Franks' complaint and these documents are central and necessary to Mr. Franks' cause of action because he contends they provide defendants with an unlawful scheme for recovering sums of settlement proceeds. Additionally, defendant tendered the documents as exhibits to its motion to dismiss and these documents allegedly directly refute the complaint's assertions. Therefore, this Court considers Mr. Frank's "Plaintiff's Second Amended Complaint" and defendants' document plan exhibits in determining whether Mr. Franks' complaint states a claim upon which relief may be granted.

## III. ERISA PREEMPTION

Defendants contend ERISA preempts all of Mr. Franks' state law causes of action. Mr. Franks argues otherwise. Although he admits in his second amended complaint he was enrolled in a plan subject to ERISA, Mr. Franks contends he should be allowed to proceed under state law.

"It is well settled that ERISA generally preepmts state law." *Rivers v. Central & S.W. Corp.,* 186 F.3d 681, 683 (5th Cir.1999)(quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)). Congress has made preemption laws through elected representatives of the people in the legislative branch to have uniformity among ERISA cases. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)(goal of ERISA is to have uniform administration of plan documents).

There are two types of preemption under ERISA—"complete" and "conflict." Complete preemption is a narrow doctrine limited to claims which seek "to recover

---

vide adequate notice to a plaintiff. *Sheppard,* 158 F.R.D. at 596 n. 7. However, "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* (quoting *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 43 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).

benefits due [a member] under the terms of the plan, to enforce his rights under the terms of [the] plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir.1995). Conflict preemption is broader and arises out of section 1144 of ERISA, which provides ERISA "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). An argument can be made ERISA both completely preempts and conflict preempts Mr. Franks' state law claims.

### A. Complete Preemption

■ Section 502 of ERISA, 29 U.S.C. § 1132, provides a means for an ERISA plan participant "to recover benefits due him under the terms of his plan, *to enforce his rights under the terms of the plan,* or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B)(emphasis added). State law claims which attempt to accomplish these ends, regardless of how they are pleaded, are "completely preempted" by ERISA. *See Warner,* 46 F.3d at 534; *see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). For example, ERISA completely preempts state law claims for breach of contract. By its very nature, a breach of contract claim purports to "enforce" rights under plan documents and, as such, is subject to complete preemption under ERISA. *See Anderson v. Electronic Data Sys. Corp.,* 11 F.3d 1311, 1315 (5th Cir.)(ERISA completely preempts state breach of contract cause of action), *cert. denied,* 513 U.S. 808, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994). Claims for intentional and negligent misrepresentation are also completely preempted by ERISA. In asserting such claims, a member necessarily contends his rights under the plan are altered by certain representations; as such, these are claims to enforce his purported plan rights and, therefore, they are completely preempted. *See Anderson v. Humana, Inc.,* 24 F.3d 889, 891 (7th Cir.1994)(misrepresentations regarding HMO plan are completely preempted). Following these authorities, Mr. Franks' breach of contract and intentional and negligent misrepresentation claims are preempted by ERISA.

For similar reasons, one could reasonably conclude Mr. Franks' remaining claims for breach of fiduciary duty, accounting, unconscionability, wrongful conversion, unjust enrichment, fraud, negligence and insurance code violations are also preempted. These causes of action, like Mr. Franks' contract and misrepresentation claims, attempt to enforce purported rights under the plan by disputing Prudential's contractual right to recover a reasonable reimbursement for the services it provided. Accordingly, these claims also appear to be completely preempted by ERISA.

### B. Conflict Preemption

■ Even if Mr. Franks' state law claims do not fall within the more narrow confines of complete ERISA preemption, they do satisfy the broader conflict preemption standard set forth in section 1144 of the Act. 29 U.S.C. § 1144. A state law claim is preempted under section 1144 for "relating to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. 2890. This applies to statutory claims as well as any causes of action brought under state common law. *See Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 757–58 (5th Cir.1990)(state law claims for fraud and negligent misrepresentation are preempted by ERISA). The Fifth Circuit has recognized the connection or reference test as the applicable standard for deter-

mining ERISA conflict preemption. *See Texas Pharmacy Ass'n. v. Prudential Ins. Co. of Am.*, 105 F.3d 1035, 1037 (5th Cir.), *cert. denied*, 522 U.S. 820, 118 S.Ct. 75, 139 L.Ed.2d 34 (1997); *CIGNA Healthplan, Inc. v. Louisiana*, 82 F.3d 642, 647 (5th Cir.), *cert. denied*, 519 U.S. 964, 117 S.Ct. 387, 136 L.Ed.2d 304 (1996). Section 1144 is "clearly expansive," has a "broad scope," "expansive sweep," is "broadly worded," "deliberately expansive," and "conspicuous for its breadth." *Heimann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 512 (5th Cir.1999).

In this Circuit, a claim "relates to a plan" when the very essence of the claim is premised on the existence of an employee benefit plan: *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). If the claims could not be made if the plan ceased to exist, they are preempted by ERISA. *See id.; Gibson v. Wyatt Cafeterias, Inc.*, 782 F.Supp. 331, 335 (E.D.Tex.1992)(state law claim in *Lee v. E.I. DuPont de Nemours & Co.* "was related to benefit plan because without the plan the cause of action would not have existed."). Similarly, the Fifth Circuit has held claims "relate to" an employee benefit plan and are conflict preempted when they affect employee benefit structures or their administration. *See Texas Pharmacy Ass'n*, 105 F.3d at 1037; *CIGNA Healthplan, Inc.*, 82 F.3d at 648 & n. 38.

Mr. Franks' state law causes of action share a common allegation: Prudential asserted reimbursement rights against Mr. Franks which it did not possess under the proper interpretation of its plan documents. His state law causes of action are, therefore, either "connected to" or "refer to" his plan. *See Heimann*, 187 F.3d at 512 (state law cause of action relates to covered employee benefit plan if it has "connection with" or "reference to" such plan). Mr. Franks' breach of contract claim contends "Prudential's contract documents did not provide Prudential and HRI with enforceable rights of subrogation and/or reimbursement." He also alleges "Prudential and HRI did not have the right under its various contract documents to demand and obtain payment for more money than it actually paid for medical goods and services." The Fifth Circuit has found claims of this nature sufficiently relate to plan documents for ERISA preemption purposes. *See Hogan v. Kraft Foods*, 969 F.2d 142, 144–45 (5th Cir. 1992)(state law breach of contract claims preempted by ERISA). In his breach of implied covenant of good faith and fair dealing claim, Mr. Franks argues Prudential breached the covenant by pursuing "subrogation and reimbursement claims under plan documents that did not establish and/or adequately describe the rights of subrogation and reimbursement." The Fifth Circuit has also found this type of claim is preempted by ERISA. *See id.* (breach of the duty of good faith and fair dealing claim relates to ERISA plan for preemption purposes); *McManus v. Travelers Health Network*, 742 F.Supp. 377, 379–80 (W.D.Tex.1990)(breach of duty of good faith and fair dealing claim preempted by ERISA).

Mr. Franks' remaining state law claims similarly relate to Prudential's plan documents. In his bad faith claim, he argues Prudential has no reasonable basis in law for pursuing its reimbursement claims. This cause of action depends upon a finding Prudential did not have the right under its plan to pursue such claims and is thus related for ERISA preemption purposes. In alleging breach of fiduciary duty, Mr. Franks challenges defendants' pursuit of reimbursement "when the relevant contract documents did not allow

Prudential and HRI to do so." He also contends Prudential's allegedly "arbitrary and capricious" interpretation of the "relevant plan documents" and further challenges Prudential's nondisclosures under the plan. Mr. Franks demand for an accounting necessarily supposes Prudential's subrogation and reimbursement practices were not authorized by the plan. In alleging unconscionability, Mr. Franks contends Prudential's interpretation of the reimbursement/subrogation provision of the plan is unconscionable and unenforceable. Mr. Franks also alleges the plan constitutes contracts of adhesion. In stating his intentional misrepresentation claim, Mr. Franks argues Prudential and HRI intentionally failed to disclose they lacked certain rights under the plan. Negligent misrepresentation is raised through allegations Prudential and HRI negligently failed to disclose they lacked certain rights under the plan. Mr. Franks wrongful conversion claim presupposes Prudential and HRI obtained monies from Mr. Franks to which they were not entitled under the terms of the plan. Likewise, Mr. Franks unjust enrichment claim suggests Prudential and HRI obtained funds from Mr. Franks to which neither was entitled under the terms of the plan. All these claims attempt to enforce Mr. Franks' rights under the agreement in that they dispute Prudential's contractual right to recover for medical services it provides. Accordingly, ERISA conflict preemption disallows Mr. Franks' state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, breach of fiduciary duty, accounting, unconscionability, intentional misrepresentation, negligent misrepresentation, wrongful conversion and unjust enrichment.

Mr. Franks' state law fraud claim generally incorporates all of his other plan-related claims. It also presupposes Prudential and HRI obtained funds from Mr. Franks to which they were not entitled under the terms of the plan. This district has held this specific cause of action is preempted by ERISA. *See McManus,* 742 F.Supp. at 379–80. Mr. Franks' negligence and gross negligence claims also incorporate all of his other plan-related allegations, and presuppose defendants obtained monies from Mr. Franks to which they were not entitled under the terms of the plan. As with his fraud claim, it can be concluded negligence and gross negligence are preempted. In his Texas Insurance Code claim, Mr. Franks alleges Prudential and HRI violated the statute by representing they possessed certain rights "under a prepaid medical services plan" and by failing to disclose they lacked enforceable rights under that plan. Such claims are preempted by ERISA. *See id.* at 379.

The Supreme Court has held state laws relating to reimbursement or subrogation are preempted by ERISA. *See FMC Corp. v. Holliday,* 498 U.S. 52, 57–60, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Mr. Franks contends his state law claims do not sufficiently relate to an ERISA employee benefit plan under the Supreme Court's holding in *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In *Travelers,* the Supreme Court acknowledged state laws which have only an "indirect" economic influence on a plan should not be subject to ERISA preemption. *Id.* at 659, 115 S.Ct. 1671. Yet, recognizing its prior decision in *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Court specifically held state laws which affect subrogation and reimbursement provisions do "directly" impact a plan. *Id.* at 657–58, 115 S.Ct. 1671. This is because they speak to the benefits a plan may offer:

Similarly, Pennsylvania's law that prohibited "plans from ... requiring reimbursement [from the beneficiary] in the event of recovery from a third party" related to employee benefits plans within the meaning of § 514(a) [ERISA's preemption provision]. The law "prohibited plans from being structured in a manner requiring reimbursement in the event of recovery from a third party" and "require[d] plan providers to calculate benefit levels in Pennsylvania based on expected liability conditions that differ from those in States that have not enacted similar antisubrogation legislation," thereby "frustrat[ing] plan administrators' continuing obligation to calculate uniform benefit levels nationwide." *Id.* (citations omitted). The Fifth Circuit later recognized: "[I]t is well established that state subrogation doctrines are preempted under ERISA...." *Sunbeam–Oster Co. Group Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1374 (5th Cir. 1996).

Prudential's HMO, Mr. Franks reasons, is not an ERISA entity itself; he can, therefore, apply state subrogation law to his ERISA plan without implicating ERISA preemption. The *Travelers* Court addressed a New York statute which required hospitals to collect certain surcharges from patients covered by commercial insurers, but not from patients covered by Blue Cross & Blue Shield plans. 514 U.S. at 649, 115 S.Ct. 1671. The statute also subjected certain HMOs to surcharges which varied with the number of Medicaid recipients each enrolled. *Id.* Although the statute raised the cost of HMO membership as opposed to Blue Cross & Blue Shield membership, the Supreme Court held such an "indirect" effect on HMOs did not implicate ERISA preemption. *Id.* at 668, 115 S.Ct. 1671. As defendants note, *Travelers* turned on the fact that the state surcharges did not mandate that HMOs offer or exclude any particular coverage or benefits. The charges simply added to the cost of doing business for HMOs. Thus, as the Supreme Court concluded, state laws which require "certain scheme[s] of substantive coverage" are preempted, while those laws which "affect only indirectly the relative prices of insurance policies" are not. *Id.* Yet, the *Travelers* Court expressly reaffirmed prior case law holding state subrogation laws are the sort of laws which do mandate "certain schemes of coverage" and hence are subject to preemption. *Id.* at 657–58, 115 S.Ct. 1671.

■ Mr. Franks argues Prudential is not an ERISA plan itself, so claims relating to subrogation are internal matters between Prudential and Mr. Franks and are governed by state law. The Fifth Circuit has rejected this argument. In *CIGNA Healthplan, Inc. v. Louisiana,* CIGNA argued Louisiana's state law forcing HMOs to employ certain physicians was preempted by ERISA. 82 F.3d 642, 646 (5th Cir.1996). Louisiana apparently argued only an ERISA plan, not an HMO itself, could invoke ERISA preemption. *See id.* at 646–47. The Fifth Circuit disagreed, reasoning state statutes which dictate the structure and operation of HMO health plans "directly" affect ERISA plans by restricting the coverage options from which they have to choose. *See id.* at 648. The Court explained:

> The fact that neither CIGNA [an HMO] nor CGLIC is itself an ERISA plan is likewise inconsequential [to finding ERISA preemption]: By denying insurers, employers, and HMOs the right to structure their benefits in a particular manner, the [Pennsylvania state] statute is effectively requiring ERISA plans to purchase benefits of a particular structure when they contract with organizations like CIGNA and CGLIC.

*Id.* The Court went on to discuss *Travelers* and concluded "the *Travelers* decision leaves undisturbed our conclusion that Louisiana's Any Willing Provider statute is preempted by ERISA." *Id.* at 649. The Fifth Circuit noted:

Unlike the New York statute at issue in *Travelers,* Louisiana's Any Willing Provider statute specifically mandates that certain benefits available to ERISA plans must be constructed in a particular manner. In other words, the Louisiana statute does not merely raise the cost of the implicated benefits; it delineates their very structure. As such, the statute falls outside the purview of the limited *Travelers* holding: The Court there repeatedly recognized that ERISA preempts "state laws that mandat[e] employee benefit structures."

*Id.*

Here, Mr. Franks argues Prudential's reimbursement plan clause is unenforceable as it was applied to him. He is thus attempting to "delineate the structure" of his plan. Under the Supreme Court's holding in *Travelers,* and the Fifth Circuit's analysis in *CIGNA,* ERISA preempts his efforts to apply state law to his plan. *See also Whitehurst,* 102 F.3d at 1374 (ERISA preempts state subrogation doctrines).

Mr. Franks argues Prudential, in administering the "Prudential HMO," did not act pursuant to ERISA. He cites an amicus brief from the United States government in a case previously before the Supreme Court, *Pegram v. Herdrich,* No. 98–1949, which states: "a 'group health plan' subject to ERISA is defined as an employee benefit plan providing medical care, while a 'health insurance issuer,' " on the other hand, is separately defined as "an insurance company, insurance service or insurance organization (including a health maintenance organization)." He then makes the following argument:

In this case, the employee benefit plan— *i.e.,* the ERISA plan—is the plan established by Franks' employer, [ATC] Long Distance, offering membership in Prudential's HMO. As to employees such as FRANKS who opt for the Prudential HMO, the "intended benefit" of the ERISA plan is simply membership in the HMO. *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). Therefore, the only "claims processing" that would occur under ERISA with respect to the HMO is determining if an individual is entitled to enroll in the HMO. Claims relating to particular medical benefits, including defendants' subrogation claims, are not claims under ERISA, but internal matters between the HMO and its members. It follows that state law should govern.

The applicability of ERISA to HMOs when HMOs make decisions regarding the medical treatment of their members has been a subject of debate among federal courts. The brief the government filed in *Pegram* concerns this HMO/medical treatment controversy. In the opinion of the brief, an HMO does not act under ERISA when it merely provides "medical services" to its members, but it does act as an ERISA entity when it exercises discretionary authority in the administration of an ERISA plan. United States Supreme Court Amicus Brief filed in *Pegram v. Herdrich,* No. 98–1949, *Brief for the United States as Amicus Curiae Supporting Petitioners,* available at 1999 WL 1067499, at *13–16. The Fifth Circuit has likewise recognized a distinction exists for ERISA purposes between an HMO's "medical decisions" and its "benefit determinations." *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1328–33 (5th Cir.1992), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). Those HMO actions

which constitute "benefit determinations" are preempted by ERISA. *See id.* ("The nature of the benefit determination [here] is different than the type of decision that was at issue in *Pilot Life,* but it is a benefit determination nonetheless. The principle of *Pilot Life* that ERISA preempts state-law claims alleging improper handling of benefit claims is broad enough to cover the cause of action asserted here."); *see also Silva v. Kaiser Permanente,* 59 F.Supp.2d 597, 600 (N.D.Tex.1999)(ERISA preempts state law claims to the extent they implicate administration of plan benefits). The Fifth Circuit interprets the scope of "benefit determinations" broadly: State laws which require HMOs "to structure their benefits in a particular manner" are preempted by ERISA. *Corcoran,* 965 F.2d at 1328–33.

The Supreme Court set forth a similar analysis in its opinion in *Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). The Court agreed with Mr. Franks an "HMOis not the ERISA plan" itself, *id.* at 2153, but rather "the agreement between an HMO and an employer who pays the premiums may, as here, provide elements of a plan by setting out rules under which beneficiaries will be entitled to care." *Id.* at 2151. Mr. Franks' allegations bear on the administration and benefits structure of his ERISA plan, not on the medical decisions which were made by Prudential with respect to his treatment. He challenges the provisions of his plan which provide for Mr. Franks to receive medical benefits necessitated by third-party liability so long as Mr. Franks reimburses Prudential if he receives compensation in the tort system.

The *Pegram* Court held individuals may not bring malpractice-type claims under ERISA against HMOs based upon an

HMO's medical "treatment" decisions. *See id.* at 2157–58. However, the Court distinguished "discrete administrative decisions separate from medical judgments," which it indicated ERISA would have covered. *See id.* at 2155. Mr. Franks in no way challenges the quality or the nature of the medical treatment rendered to him by Prudential. When Mr. Franks challenges the defendants' administration of the reimbursement provision of his ERISA plan, he challenges an administrative decision subject to ERISA, not a "medical judgment" reached by them and exempt from ERISA.

Mr. Franks also cites *Corporate Health Ins., Inc. v. Texas Dept. of Ins.,* 12 F.Supp.2d 597 (S.D.Tex.1998), for the proposition that state laws allowing suits against HMOs are not preempted by ERISA because HMOs are not employee benefit plans. There, the Court held portions of a Texas statute which permit individuals to sue their HMOs for malpractice for their medical treatment were not ERISA-preempted. *Id.* at 602–03, 630. Additionally, the Court also held ERISA preempted and therefore invalidated other sections of the statute because those sections required HMOs in Texas to structure their benefits in particular ways.[5] *Id.* at 626–28. Thus, as defendants point out, even though the statute was aimed specifically at HMOs, and not ERISA plans, it was nevertheless preempted because of its direct impact on ERISA plans: "By denying health insurance carriers, HMOs, and other managed care entities the right to structure their benefits in a particular manner, the Act effectively requires ERISA plans to purchase benefits of a particular structure when they contract with organizations like Plaintiffs [HMOs]." *Id.* at 628 (citing *CIGNA Healthplan, Inc.,* 82 F.3d at 648). Because Mr. Franks

---

**5.** On appeal, the Fifth Circuit held the anti-retaliation and anti-indemnification provi-

sions were not preempted by ERISA. 215 F.3d 526, 535–36 (5th Cir.2000).

takes issue only with the administration of his plan, and in no way disputes the way in which Prudential arranged his medical care, ERISA necessarily preempts his state law claims.

The Court holds Mr. Franks' argument Prudential lacked certain subrogation/reimbursement rights under the terms of his plan must be resolved through his ERISA claims (counts XIV through XVII) of his complaint. *See FMC Corp.*, 498 U.S. at 57–60, 111 S.Ct. 403 (definition of subrogation/reimbursement rights under an ERISA plan is matter of federal, not state, law). Mr. Franks' state law causes of action (counts I through XIII) are, therefore, dismissed on grounds of ERISA preemption. His RICO claims (counts XVIII though XXIII) and conspiracy to commit unfair debt collection practices under federal law claim (count XXIV) are discussed separately.

## IV. ERISA ANALYSIS

### A. The Older Version of Mr. Franks' ERISA Plan Applies

■ The parties make arguments based upon differences in language between the reimbursement clauses of older and newer versions of Mr. Franks' ERISA plans. Mr. Franks relies upon the newer version of the plan which adds language arguably more restrictive to Prudential's right to recover reimbursement proceeds. Prudential maintains its contractual right to reimbursement arose under the old plan.

The new version of the plan went into effect July 1, 1995, following Mr. Franks' injury in early 1995 and the last of his medical treatment for accident-related injuries on May 26, 1995. The law of this Circuit indicates the language of the old plan controls this case. Specifically, the district court's opinion in *Walker*, which was affirmed by the Fifth Circuit Court of Appeals, implies the extent to which Mr. Franks has a reimbursement obligation under his ERISA plan for his medical treatment depends on what his ERISA plan said at the time he received that treatment. *See Walker v. Wal–Mart Stores, Inc.*, 27 F.Supp.2d 699, 705 (S.D.Miss.), *aff'd*, 159 F.3d 938 (5th Cir. 1998). As here, the beneficiary of an ERISA plan challenged her plan's entitlement to reimbursement out of settlement proceeds. *Id.* at 700. Although there is no indication the plan changed, the plan's right to reimbursement was determined as of the time the beneficiary was injured and received medical treatment. *See id.* at 706. The Court stated:

> In 1991, [the member] sustained injuries in an automobile accident and received medical treatment for the same. Her ERISA-defined employee welfare benefit paid her medical expenses contingent upon her agreement to reimburse the Plan for "any amounts previously paid to [her] by the Plan." [The member] subsequently received a settlement closely approximating the received amount of medical expenses incurred by the Plan on her behalf. . . .

*Id.* (discussing *National Employee Benefit Trust of Associated Gen. Contractors of Am. v. Sullivan*, 940 F.Supp. 956, 958–59 (W.D.La.1996)). As the plan paid the member's medical expenses under the plan in existence at the time of injury and treatment, it is reasonable to conclude this is when the plan's contractual right to reimbursement, if any, arises. *See id.* Here, at the time Mr. Franks was injured and received treatment, Prudential's reimbursement provision conditioned medical coverage for Mr. Franks' injuries upon his agreement to repay Prudential from any third-party recovery. It is reasonable to find, as in *Walker*, Prudential's contractual right to reimbursement arose under the plan in effect at the time of his injury and

when he received treatment. Common sense also leads the Court to conclude the plan in effect at the time of service applies.

Mr. Franks' plan documents in effect at the time of his injury and treatment contained the following provision establishing Prudential's right to reimbursement in the event Prudential provided medical services to Mr. Franks for injuries caused by third-parties:

A. REIMBURSEMENT.

. . . . .

(2) Each Covered Person agrees to the following in return for PruCare's providing services, supplies or benefits for a Covered Person's Sickness or Injury that: (A) is caused as a result of an accident; or (b) arises out of, or in the course of, any work for wage or profit and is covered by any workers' compensation law, occupational disease or similar law:

(a) Immediately upon receipt of any payments or collection of damages (as a settlement award, judgment or in any other way) with respect to such Sickness or Injury, the Covered Person involved (or if incapable, that person's legal representative) will reimburse PruCare for:

(i) *the Reasonable Cash Value of any benefits provided directly by PruCare as a result of this Sickness or Injury;* and

(ii) the actual costs paid by PruCare for medical services required by the Covered Person as a result of the Sickness or Injury.

(Emphasis added). The Court shall apply this older provision when conducting its analysis of Mr. Franks' claims.

### B. The Language of the ERISA Plan is Controlling

Mr. Franks argues, notwithstanding this language, Prudential lacked reimburse-ment rights. Alternatively, Mr. Franks alleges Prudential's actual recoveries exceeded the extent of any rights it did possess. Prudential argues state and federal case law dictate the ERISA plan should be enforced as written, and Mr. Franks has demonstrated no reason for this Court to invalidate those documents.

 An ERISA plan's language controls and its straightforward language should be given its natural meaning. *See Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989). Courts should strictly enforce the terms of an ERISA plan to ensure the question of what benefits a plan may offer are left largely to the private parties creating the plan. *See Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). The precise level of health benefits offered by an ERISA plan are determined mainly by the contract entered into by the plan beneficiaries. *See John Morrell & Co. v. United Food & Commercial Workers Int'l Union,* 37 F.3d 1302, 1303–04 (8th Cir.1994). Regarding subrogation, such a "provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan." *Waller v. Hormel Foods Corp.,* 120 F.3d 138, 140 (8th Cir.1997). The Fifth Circuit has determined where an ERISA plan's language sets out plain and unambiguous terms for subrogation and reimbursement, those terms must be enforced as written. *See Sunbeam–Oster Co. Group Benefits Plan v. Whitehurst,* 102 F.3d 1368, 1376 (5th Cir.1996). Applying general and circuit precedents, this Court concludes the terms which appear in Mr. Franks' plan, including the provision allowing Prudential to recover the reasonable value of medical services in the event a member receives

funds from a third-party tortfeasor, are those which should be enforced.

### C. Circuit Authorities

 Although the Fifth Circuit has not addressed the "reasonable cash value" issue, federal and state appellate courts have enforced contractual rights of subrogation and reimbursement in HMO plan documents. *See Harris v. Harvard Pilgrim Health Care, Inc.,* 208 F.3d 274, 278–79 (1st Cir.2000)(enforcing strict language of an HMO reimbursement clause); *Ince v. Aetna Health Mgmt., Inc.,* 173 F.3d 672, 676 (8th Cir.1999)(enforcing an HMO's "reasonable value" language in subrogation provision), *First Midwest Trust Co. v. Rogers,* 296 Ill.App.3d 416, 233 Ill.Dec. 833, 701 N.E.2d 1107, 1118–119 (1998)(upholding an HMO's right to recoupment under an HMO plan document); *Medica, Inc. v. Atlantic Mut. Ins. Co.,* 566 N.W.2d 74, 79 (Minn.1997)(permitting HMO to assert subrogation claim because HMO's policy permitted such claims); *Demmer v. American Family Mut. Ins. Co.,* 200 Wis.2d 94, 546 N.W.2d 169, 171 (Wis.App.1996)(upholding subrogation provision in HMO membership agreement). In *Ince,* the Eighth Circuit rejected the same claims brought in this case and enforced "reasonable value" language in an HMO subrogation provision. 173 F.3d at 676. A putative class of Minnesota plaintiffs brought suit against their HMO, MedCenters Health Care Inc. ("MedCenters"), asserting ERISA violations and state court causes of action. MedCenters had sought from plaintiffs reimbursement for the "reasonable value of services" it provided to them, as provided by plan documents. *Id.* Just as in this case, the purported class alleged MedCenters had defrauded them by seeking subrogation which exceeded the costs of the plan benefits provided. *Id.* at 674. In affirming the District Court's order dismissing these allegations prior to

class certification, the Eighth Circuit rejected plaintiffs' claims explaining MedCenters was within its rights to seek reimbursements for amounts which exceeded its cash outlays:

> The provision in the MedCenters Plans defining the subrogation interest as extending "to the extent of the reasonable value of services and benefits provided" accurately described that the Plan was entitled to recover the fair value of the services rendered and was not limited to a recovery for cash expenditures.

*Id.* at 676. The Court further stressed the term "reasonable value" in an HMO plan does not refer merely to the HMO's cash payments to health care providers:

> Plaintiffs further argue that the district court erred in dismissing their claims that MedCenters and Aetna breached the Plans by asserting and collecting subrogation claims for more than the Plans in fact paid providers. As we have explained, defendants' methodology in calculating subrogation claims was consistent with the Plans because *the well-established meaning of the term "reasonable value" in the Plan subrogation provisions is the medical providers' normal charges for the services provided.*

*Id.* (emphasis added).

The claims of Mr. Franks and the putative class in this case are not substantively different than those brought in *Ince.* Like MedCenters, Prudential is alleged to have recovered in subrogation fees greater than those paid. Also like MedCenters, Prudential had an agreement with its members entitling it to recover the "reasonable value" of their medical benefits. Following *Ince,* Prudential has acted properly in providing benefits and seeking reimbursement pursuant to the plan.

This Court relies primarily upon decisions from the First and Eighth Circuit Courts of Appeals. *See Harris*, 208 F.3d at 278–79 (enforcing strict language of an HMO's reimbursement clause); *Ince*, 173 F.3d at 676 (enforcing HMO's "reasonable value" language in subrogation provision). While a federal district court is not obligated to follow the decisions of another circuit, *Maher v. Zapata Corp.*, 490 F.Supp. 348, 352 (S.D.Tex.1980), *aff'd*, 714 F.2d 436 (5th Cir.1983), an argument can be made their application comports with Fifth Circuit precedent. As noted, the Fifth Circuit determined in *Whitehurst* an ERISA plan's language should be enforced as written. 102 F.3d at 1376. Mr. Franks' ERISA plan gives Prudential the right to recover the reasonable value to the medical services it provided to Mr. Franks in the event he recovers from a third-party tortfeasor. Enforcing the plan as written, *Harris* and *Ince* appear to be persuasive authority in support of the argument that reimbursement rights, including reasonable value subrogation provisions, under the terms of an ERISA plan, are valid and enforceable.

Mr. Franks cites a federal district court case, *Ries v. Humana Health Plan, Inc.*, No. 94 C 6180, 1995 WL 669583 (N.D.Ill. Nov.8, 1995), to dispute the enforceability of reasonable value recovery rights. While *Ries* did concern a health plan's practice of recovering a "billed" amount which was more than a "paid" amount, it was in the context of plan language which did not discuss reasonable value recoveries. *See id.* The plan considered by the Court provided only for reimbursement of the HMO's *actual* expenditures. *See id.* (emphasis added). *Ries* does not therefore change this Court's analysis. Mr. Franks' ERISA claims (counts XIV through XVI) dismissed.

## V. THE FEDERAL HMO ACT

■ These arguments aside, Mr. Franks invokes the federal Health Maintenance Organization Act to argue no HMO can seek subrogation or reimbursement, whether for reasonable value or any amount. Under the provisions of the HMO Act, once the plan member has made his or her monthly payment, all services for the month have been pre-paid with the HMO assuming "full financial risk on a prospective basis for the provision of basic health services." 42 U.S.C. § 300e(c)(2). Congress has established two exceptions to the prepayment rule: (1) recoveries under workers' compensation law; and (2) recoveries through coordination of benefits with another insurance policy under which the member was a beneficiary. *Id.* § 300e(b)(1). Because subrogation and reimbursement are not listed as exceptions, Mr. Franks argues, they are not permitted. *See Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980)("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

At least one court has found there is "nothing in the [federal HMO Act] or related regulations that declares a third party liability provision to be unlawful as a matter of substantive law." *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App.4th 1284, 1302, 22 Cal.Rptr.2d 20 (1993), *cert. denied*, 511 U.S. 1084, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). Moreover, there is no private enforcement provision in the Act. The applicable regulations place enforcement solely within the hands of the federal government. *See* 42 C.F.R. § 417.163 (2001). The government can generally punish an HMO which does not satisfy the Act's criteria by revoking

its qualification for federal assistance, although there are also other remedies under certain circumstances. *See id.* at § 417.163(d). Also of import, Congress in 1976 considered and rejected an amendment to the Act which would have permitted HMO enrollees to bring private suits to enforce its terms. *See* H.R. CONF. REP. No. 94–1513, at 30 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4355, 4366. Even an unpublished opinion cited by Mr. Franks determined no private right of action exists:

> Thus, when Congress added the reimbursement provision in § 300e(b)[the HMO Act clause Mr. Franks focuses upon], it did not intend to create a private right of action, but simply intended to ease eligibility requirements for federal funding. *See Health Care Plan, [Inc. v. Aetna Life Ins. Co.],* 966 F.2d [738,] 741 [ (2d Cir.1992) ]("Section 300e–9 ... reveals that Congress envisioned an administrative rather than a judicial enforcement scheme.").

*Rose v. Health Plan, Inc.,* Civil Action No. 5:94CV30, at 5 (N.D.W.Va. Nov. 1, 1994). The federal HMO act thus does not appear to be the proper vehicle for a private individual to bring a cause of action under the Act or attempt to employ its language in litigation against an HMO.

■ Presuming Mr. Franks has a private right of enforcement, he has not shown the 1978 HMO Act amendments to which he points were intended to restrict an HMO's resort to third-party payors. Mr. Franks contends Prudential's pursuit of subrogation/reimbursement is barred because the post–1978 Act specifies two types of third-party recoveries for HMOs (workers' compensation and coordination of benefits) but does not mention subrogation or reimbursement. However, legislative history to the amendments to the HMO Act indicates Congress did not intend to limit third-party recoveries as strictly as Mr. Franks suggests:

> Allowing a qualified HMO to exclude the cost of care covered by workmen's compensation *or other third party payors* places HMOs on a more competitive basis with other health insurers which are permitted to subrogate third party claims and coordinate benefits through the insurance policy."

H.R. REP. No. 95–1479, at 53 (1978)(emphasis added). Legislative history also indicates Congress did not intend the Act to extensively regulate HMOs, but rather to primarily govern the eligibility of HMOs for federal assistance. *See Physicians Health Plan v. Citizens Ins. Co.,* 673 F.Supp. 903, 905 (W.D.Mich.1987). To this end, the Act authorizes government grants, loans, loan guarantees and other federal inducements to persons to encourage them to establish HMOs, as long as those HMOs satisfy certain criteria. *See Travelers Health Network v. Orleans Parish Sch. Bd.,* 842 F.Supp. 236, 242 (E.D.La. 1994). In fact, legislative history to the original HMO Act provides: "In preparing the legislation the Committee has attempted not to describe exhaustively, or in detail a single 'proper' system for the delivery of healthcare services." H.R. REP. No. 93–451, at 13 (1973). Rather, the purpose of the Act is to "provide assistance and encouragement for the establishment and expansion of health maintenance organizations...." S. REP. No. 93–129, at 1 (1973), *reprinted in* 1973 U.S.C.C.A.N. 3033, 3033. In light of these authorities and the legislative history of the federal HMO Act, the Court declines to conclude Congress intended to bar HMO subrogation and reimbursement via the 1978 amendments to the Health Maintenance Organization Act.

Mr. Franks relies upon a state court case, *Riemer v. Columbia Med. Plan,* 358 Md. 222, 747 A.2d 677 (2000), which seem-

ingly supports his proposition that, because of the "prepaid" nature of HMOs, no rights of reimbursement or subrogation exist. Plaintiff argued, similarly to Mr. Franks, because Maryland's HMO Act did not expressly mention subrogation and because HMOs should only receive as "compensation" their members premiums, then HMOs have no subrogation rights. The Court agreed and issued a decision in plaintiff's favor. *Id.* at 697. In response to the *Riemer* decision, however, the Maryland legislature passed a bill confirming an HMO's rights of reimbursement and subrogation. *See* S. 903, 2000 Reg. Sess. (Md.2000). Although the United States Congress is not bound to follow the Maryland legislature, an argument can at least be made that legislative silence on the issue of HMO subrogation does not necessarily imply legislative disapproval.

## VI. "BILLED VERSUS PAID"

Plaintiff Franks alleges in his second amended complaint defendants sought and collected "sums in excess of what Prudential was entitled to collect" and seeks an accounting of Prudential's billing practices (count XVII). Mr. Franks contends Prudential, through its collection agent HRI, recovered more in reimbursement for his medical treatment than Prudential had to pay in cash for that treatment. Specifically, plaintiff maintains Prudential improperly sought reimbursement from him for the amounts its providers would typically bill for their services, instead of the amounts Prudential actually paid for them. In their motion to dismiss, defendants contend Mr. Franks incorrectly argues Prudential billed Mr. Franks an amount which was higher than the amount Prudential paid its providers. Specifically, defendants contend:

> Franks is wrong factually. In fact, according to HRI's records, Prudential requested reimbursement from Franks'

personal injury settlement for only those amounts it "paid" to Franks' providers, not the amounts they "billed" Prudential. HRI's data shows that Franks' medical providers "billed" Prudential $3,429.00, but Prudential "paid" them $2,074.98. Prudential later sought reimbursement from Franks only for the "paid" amount—$2,074.98. Indeed, Franks attorney at the time misunderstood this and actually tried to pay HRI and Prudential the full $3,249.00. HRI and Prudential declined to accept the $3,429.00 and refunded Franks the difference. Franks has no claim.

The Court requested further briefing on this issue, and in response, both parties submitted arguments and authorities, along with summary-judgment-type evidence. As matters outside the pleadings are presented and not excluded by the Court, this portion of defendants' motion to dismiss is converted to one for summary judgment. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir.1998); *see also* FED. R. CIV. P. 12(b).

### A. Summary Judgment Standard of Review

A motion for summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute concerning a material fact is considered "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not the Court's function to "weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The Court must determine if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. In ruling on a motion for summary judgment, all inferences drawn from the factual record is viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If the party moving for summary judgment carries its burden of producing evidence which tends to show there is "no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial." *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). The nonmoving party may not rely upon mere conclusory allegations to defeat a motion because allegations of that type are not competent summary judgment evidence and are insufficient to defeat a proper motion. *Id.* In fact, if the "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," a motion for summary judgment may be granted even in cases "where elusive concepts such as motive or intent are at issue." *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The party opposing the motion also may not rest on the allegations contained in the pleadings but "must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). In meeting this requirement, the party must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports his or her claim." *Id.* Rule 56 of the Federal Rules of Civil Procedure does not impose upon this Court the "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)). A summary judgment will only be precluded by disputed facts which are material, i.e. "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Factual disputes which are irrelevant or unnecessary to the issue will not be preclude summary judgment. *Id.*

B. Billed Versus Paid Discussion

██ In response to the Court's request for further briefing, Mr. Franks contends the available evidence shows Mr. Franks was indeed "billed" more than Prudential "paid." Alternatively, he contends additional discovery is needed to determine the amount billed and the amount paid. In reply, defendants submit records, documentary evidence and affidavit testimony to support their position they recovered from Mr. Franks the amount Prudential actually paid. After careful consideration, the Court finds defendants have shown they recovered from Mr. Franks the amount Prudential actually paid to its providers.

Regarding its fee-for-service providers, defendants present HRI computer records showing amounts billed and amounts paid, along with a summary of the charges defendants collected from plaintiff. Six providers are listed, the last column is headed "Amt. Paid" and totals $2,074.98, the amount collected by defendants from Mr. Franks. The first provider listed is Alamo

Family Medical Clinic. The record reflects no charges were collected for this provider from plaintiff. The second provider is Douglas Marshall, M.D. Defendants provide records showing Dr. Marshall billed $1,239.00, but Prudential paid only $1015.00. Defendants collected $1,015.00 from Mr. Franks. The third provider is Alamo Urology Association. Records submitted show Alamo Urology Association billed $185.00 for the services rendered to plaintiff, although Prudential paid only $107.18. Defendants submit further records showing defendants collected $107.18 from Mr. Franks for the services of Alamo Urology Association. The fourth provider is South Texas Radiology Group. The records submitted show South Texas Radiology billed $131.30 for services to plaintiff, but Prudential paid only $105.04. The records also show defendants collected $105.04 from Mr. Franks. The fifth provider is South Texas MRI Ltd. The record sheet shows South Texas MRI Ltd. billed $534.70 for services to Mr. Franks, but Prudential paid only $427.76. $427.76 is the amount the records show defendants collected from plaintiff for the services of South Texas MRI Ltd. The sixth provider, Macgregor Medical Association ("Macgregor"), is a capitated provider. The documentation shows the billed amount submitted by Macgregor for the services rendered to Mr. Franks was $1,685.00. Defendants also provide evidence the paid amount for these services was $420.00, the amount collected from Mr. Franks.

Plaintiff contends the Court cannot rely on these record sheets to determine what Prudential actually paid. The "paid" field in the HRI records, Mr. Franks maintains, is "nothing more than an unverified field transmitted by Prudential to HRI." In response, defendants submit Prudential's claims systems records to verify the amount in the "paid" field in the HRI records is the amount actually paid to that provider. Defendants also submit affidavit testimony which verifies through bank drafts the amounts Prudential paid to plaintiff's providers. The record finally contains a preliminary Consolidated Statement of Benefits for Plaintiff which was submitted to plaintiff's personal injury attorney. Defendants contend, and plaintiff does not dispute, the attorney verified all charges prior to paying the lien amount.

Mr. Franks argues the "paid" amount is not really what Prudential paid for services. Timothy L. Schmidt, a health care auditor, reports by affidavit an audit of Prudential's system and all of Prudential's providers is required to determine what Prudential actually paid because "the actual payments made to the medical service provider pursuant to the negotiated contract [may] differ[ ] from the payment reflected in the claims payment system and/or documentation." Mr. Franks' suggestion that Prudential's claims payment system was not tied directly to the actual amount paid to providers is not supported by the evidence. Defendants have submitted unchallenged records showing they sought reimbursement for the amount paid rather than billed. The claims payment system, the Charts system printouts, contain information showing the amount of checks paid to providers, including the check number. Defendants additionally provide a copy of a cashed check made payable to South Texas MRI Ltd. The amount of that check, $1,206.18, corresponds to the amount shown in corresponding summary judgment evidence.

Mr. Franks argues fairness dictates that Prudential be limited to reimbursement for the amount it "paid" for his medical treatment. Presuming evidence Mr. Franks was billed more than Prudential paid its physicians, his argument fails to consider overhead, payroll, real estate, and other

administrative expenses, along with ad valorem taxes and other monies Prudential must pay as a part of the reasonable cost of doing business. It also fails to take into account the fact Prudential does not receive discounted medical services for free. Prudential presents summary judgment evidence showing it negotiates complex arrangements with providers which may include aggregate levels of compensation and entitlement to additional provider fees. Just as Mr. Franks presumably did not limit the value of his claim in the underlying suit against the tortfeasor to the amount Prudential "paid" for his care, Prudential was "entitled to recover the fair value of the services rendered and was not limited to a recovery for cash expenditures" *Ince v. Aetna Health Mgmt., Inc.,* 173 F.3d 672, 676 (8th Cir.1999).

In any event, defendants make a persuasive argument Mr. Franks is not necessarily entitled to relief even if he can factually support his billed versus paid claim. The issue is not whether Mr. Franks paid the billed or paid amount; the issue is whether defendants were entitled to reimbursement of the reasonable value of the services provided to plaintiff. Without objection from plaintiff, defendants note: "[n]owhere in his brief to the Court, or in plaintiff's briefing on the pending motion to dismiss does plaintiff state that defendants recovered more than the reasonable value of those services to him."

Mr. Franks asserts an HMO should be limited to the prepayments it receives from its members for providing health care. He cites to a recent case from the United States Supreme Court, *Pegram v. Herdrich,* 120 S.Ct. 2143, 2149 (2000), which recognized an HMO assumes the financial risk of providing medical benefits upon receipt of a fixed fee from each patient enrolled in the plan. *Pegram* also acknowledged: "[t]he essence of an HMO

is that salaries and profits are limited by the HMO's fixed membership fees." *Id.* The question before the Court in *Pegram* was whether the treatment and eligibility decisions made by HMO physicians are fiduciary decisions under ERISA. *Id.* at 2145. The discussion quoted by plaintiff in his brief on the assumption of the risk therefore relates to the Court's consideration of this issue pursuant to the requirements of ERISA and in the context of determining whether a physician acts as a fiduciary when treating a patient on behalf of an HMO. *See id.* at 2150. It is not dispositive of the question of whether Prudential had the right to recover the reasonable value of the medical services it provided to Mr. Franks.

Moreover, when read in context, the statement "[t]he essence of an HMO is that salaries and profits are limited by the HMO's fixed membership fee," appears to refer to physician salaries and profits, as opposed to those of the HMO. In *Pegram,* plaintiff challenged her HMO's practice of awarding physicians "year-end distribution" profits. *Id.* The Court explained financial incentives to physicians are necessary to any HMO scheme. In so doing, the *Pegram* decision cited Dr. Orentlicher, *id.,* who listed some of these incentives, including physician salaries. Orentlicher, *Paying Physicians More to do Less: Financial Incentives to Limit Care,* 30 U. Rich. L.Rev. 155, 174 (1996). In light of the fact plaintiff's point of error and the related discussion focused upon physician salaries and profits, the cited quotation does not support Mr. Franks' position.

Even if the *Pegram* opinion meant to limit an HMO's salaries and profits to the membership fees it receives, there is no evidence in this case that Mr. Franks' reimbursement went to Prudential's salaries or profits. The reimbursement monies could have gone to pay for some of

the reasonable costs of doing business discussed above. Or, as defendants imply, the funds could have been used to keep Prudential's membership fees down. Mr. Franks' billed versus paid accounting claim (count XVII) is dismissed.

## VII. RICO AND CONSPIRACY TO VIOLATE THE FAIR DEBT COLLECTION PRACTICES ACT

 In his second amended complaint, Mr. Franks also brings RICO claims (counts XVIII though XXIII) and a conspiracy to violate the Fair Debt Collection Practices Act (count XXIV) cause of action against defendants. These claims are based on his allegations Prudential deliberately overcharged plaintiff for the medical care he received. Presuming Mr. Franks was overcharged, the record does not support an implication of intentional wrongdoing necessary to sustain a RICO or conspiracy cause of action. *See* 18 U.S.C. § 1961(1)(RICO requires commission of number of intentional state and federal offenses); *Peavy v. WFAA–TV, Inc.,* 221 F.3d 158, 173 (5th Cir.2000)("[C]ivil conspiracy requires specific intent."); 15 U.S.C. § 1692f (Fair Debt Collection Practices Act requires unconscionable conduct in collecting or attempting to collect debt). In fact, the summary judgment evidence shows plaintiff's attorney mistakenly remitted the "billed amount," instead of the "paid amount," to HRI. Rather than keeping the amount remitted, HRI on its own initiative pointed out the error to counsel and issued a refund check for $1,354.02, the difference between the amount billed and the amount paid.

Moreover, in the wake of a Supreme Court decision allowing a RICO claim to proceed against an insurer,[6] a proposed class action which alleged HMOs put profits ahead of their members did not meet with success. In *Maio v. Aetna, Inc.,* the Third Circuit Court of Appeals affirmed a trial court's order granting a rule 12(b)(6) motion to dismiss filed in a RICO case brought against an HMO. *See* 221 F.3d 472, 474, 488 (3d Cir.2000). The Court found a financial loss stemming from purported overpayments to an HMO does not constitute an "injury" sufficient to confer standing to bring a RICO cause of action. *Id.* at 488. As to unfair collection practices, the Fifth Circuit recently held that the individual findings of reliance necessary to establish RICO liability and damages preclude class certification. *See Patterson v. Mobil Oil Corp.,* 241 F.3d 417, 418–19 (5th Cir.2001).

Legislative history and current developments indicate Mr. Franks' RICO claims go beyond what Congress intended when passing the statute. The RICO statute was drafted as part of the Organized Crime Control Act of 1970, Pub.L. 91–452 (1970), which Congress enacted to eradicate organized crime in the United States. The Statement of Findings and Purpose of the Organized Crime Control Act includes congressional findings regarding the complex nature of organized crime in America, which "derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics, and other forms of social exploitation. . . ." *Statement of Findings and*

---

**6.** In *Humana v. Forsyth,* the Supreme Court held that RICO claims against an HMO are not necessarily "reverse-preempted" by the McCarran–Ferguson Act, which leaves much insurance regulation to the states. 525 U.S. 299, 314, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999). Although *Humana* at least partially opened the door to civil RICO actions against insurers, a settlement agreement was reached before the case proceeded to trial. Frederick B. Lacey, *Civil RICO Update,* SE63 ALI–ABA 651, 667 (December 9, 1999).

*Purpose,* Organized Crime Control Act of 1970, Pub.L. 91–452 (1970), *reprinted in* 1970 U.S.C.C.A.N. 1073, 1073. Furthermore, Congress explicitly stated the purpose of the Act is:

> To seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.

*Id.* Importantly, both current and future RICO suits relating to health care benefits may be barred to some extent by amendments to RICO being considered by Congress. *See* Frederick B. Lacey, *Civil RICO Update,* SF13 ALI–ABA 837, 848 (November, 2000)(discussing H.R. 4577, 106th Cong. § 2232(b) (2000)). Under a bill currently in conference committee, civil RICO claims would be barred to the extent certain other remedies are available and, the bill, as written, would apply to pending RICO claims. *Id.* Mr. Franks RICO claims (counts XVIII though XXIII), along with his conspiracy to violate the Fair Debt Collection Practices Act claim (count XXIV), are dismissed.

## VIII. "COMMON FUND" ATTORNEYS' FEES

### A. If Mr. Franks had not Made the Effort to Employ Counsel to Pursue the Third–Party Tortfeasor, There Would Have Been NO Money for Prudential to Recover!!

Mr. Franks also seeks attorneys' fees alleging Prudential and HRI violated his rights by failing "to reduce Prudential's subrogation and reimbursement claims by a pro rata share of the cost of creating the common fund out of which the collection claim" was paid. Defendants argue this claim was denied by the Fifth Circuit in

*Walker v. Wal–Mart Stores, Inc.,* 159 F.3d 938 (5th Cir.1998). There, as in this case, an ERISA plan member challenged her plan's exercise of subrogation against her, arguing the plan should have had to deduct her attorneys' fees and expenses from its reimbursement recovery. *Id.* at 939–40. The plan did not provide for the deduction of attorneys' fees from the member's settlement proceeds. *Id.* at 940. In the absence of such a provision, the Fifth Circuit denied the common fund attorneys' fees claim:

> The Plan's unambiguous language does not include a provision for reduction of its subrogation lien for payment of attorneys' fees or costs. Interpreting the provisions to provide for attorneys' fees and expenses would have been wholly improper by the district court.

*Id.; see also Harris v. Harvard Pilgrim Health Care, Inc.,* 208 F.3d 274, 278 (1st Cir.2000)(citing *Walker,* 159 F.3d at 940).

Mr. Franks maintains his plan does includes provisions for the deduction of attorneys' fees incurred by Mr. Franks. He directs the Court's attention to the following language contained within the plan:

> [A] *reasonable* share of fees and costs incurred to obtain such payments *may* be deducted from the reimbursements to be made to PruCare....

> A fair share of the legal costs borne by the claimant needed to obtain the payments described ... *may* be subtracted from the repayment....

> As specified in the provision, a *reasonable* portion of the total costs of recovery attributable to the recovery of the medical or loss of time expenses *may* be deducted by the injured party from any amounts repaid to us.

(Emphasis added).

Defendants acknowledge Mr. Franks' ERISA plan mentions attorneys' fees and

qualifies the plan's general language giving Prudential the right to recover the value of medical services provided. They argue Mr. Franks' nonetheless runs afoul of *Walker* because the plan provides only that attorneys' fees "may" be offset, rather than requiring that they "shall" be offset. Defendants state:

> The Fifth Circuit has held, quite specifically, that attorneys' fees need not be deducted from subrogation recoveries in the absence of ERISA plan language requiring it. *See Walker v. Wal–Mart Stores, Inc.,* 159 F.3d 938, 940 (5th Cir. 1998). Franks points to a clause in his ERISA plan that states that attorneys' fees "may" be deducted from a reimbursement request. *See* Franks Brief, at 25 n. 50. But "may" does not mean "shall." Even if this particular clause applies to Prudential's reimbursement claim against Franks (and it does not), its plain terms do not *require* Prudential to fund his attorneys' fees. Accordingly, under *Walker,* Franks has no right to demand them.

The majority view is that an ERISA plan need not contribute to attorneys' fees where its plain language gives it an unqualified right to reimbursement. *See e.g., Walker,* 159 F.3d at 940; *United McGill Corp. v. Stinnett,* 154 F.3d 168, 172–73 (4th Cir.1998); *Health Cost Controls v. Isbell,* 139 F.3d 1070, 1072 (6th Cir.1997); *Bollman Hat Co. v. Root,* 112 F.3d 113, 116–17 (3d Cir.), *cert. denied,* 522 U.S. 952, 118 S.Ct. 373, 139 L.Ed.2d 290 (1997). As "one of the primary functions of ERISA is to ensure the integrity of written, bargained-for benefit plans," *United McGill Corp.,* 154 F.3d at 172, "generally speaking ERISA does not mandate that a covered plan include particular substantive provisions." *Harris,* 208 F.3d at 277. Thus, "the plain language of an ERISA plan must be enforced in accordance with its 'literal and natural meaning.'" *United*

*McGill Corp.,* 154 F.3d at 172 (citation omitted).

Mr. Franks cites Texas cases construing state laws which regulate non-ERISA insurance contracts. In some cases, the common fund doctrine has been read into contractual clauses giving insurers an unqualified right to reimbursement from their insureds. *See Lancer Corp. v. Murillo,* 909 S.W.2d 122, 126–27 (Tex.App.— San Antonio 1995, no writ). A court may read the reimbursement clause's silence as an ambiguity, then base its holding on the prevailing state-law principle that ambiguities in insurance policies must be construed in the insured's favor. *See id.*

"By contrast, however, ERISA creates precisely the opposite presumption: unqualified plan provisions need not explicitly rule out every possible contingency in order to be deemed unambiguous." *Harris,* 208 F.3d at 278. ERISA merely requires covered plans be "'sufficiently accurate and comprehensive to reasonably apprise such ["average plan"] participants and beneficiaries of their rights and obligations under the plan.'" *Walker,* 159 F.3d at 940 (quoting 29 U.S.C. § 1022(a)). It therefore follows an ERISA plan which requires its members to reimburse the plan for all benefits, but is silent as to attorneys' fees, precludes offsets for attorneys' fees. *See id.*

 The plan language in this case, however, is not silent on the issue of attorneys' fees and specifically qualifies Prudential's right to reimbursement of any monies received for services provided or arranged if a settlement agreement is reached. Defendants' argue, under *Walker,* the plan's use of the word "may" absolves them of the obligation to offset attorneys' fees. This Court agrees the *Walker* Court held the language of the ERISA plan governs the allocation of

funds in dispute. *See id.* at 940. Where the plan's unambiguous language does not include any provision for reduction of its subrogation lien for payment of attorneys' fees, the Court cannot write-in such a provision. *See id.* To allow such would create a circumstance clearly forbidden by the jurisprudence of ERISA. *See id.*

This does not mean, however, *Walker* stands for the proposition that plan documents which expressly refer to the allocation of attorneys' fees are invalid because the provider "may," but is not required through the use of the word "shall," to reimburse attorneys' fees. *Walker* does not direct courts to look for ambiguity based upon use of words such as "may" or "shall." Rather, *Walker* requires courts to determine that the plain language of the ERISA plan is not ambiguous as interpreted under Fifth Circuit rules of construction for ERISA plans, *see Whitehurst,* 102 F.3d at 1375, but rather spells out the agreement between the parties in a clear and easy-to-understand manner as dictated by Congress. *See Walker,* 159 F.3d at 940. Specifically, where a relevant provision is contained within the plan, courts must determine whether the plan's language unambiguously provides a method for the allocation of the settlement recovery, including attorneys' fees. *See id., see also MetraHealth Ins. Co. v. Drake,* 68 F.Supp.2d 752, 756 (E.D.Tex.1999)(courts must decide whether ERISA plan provides unambiguous rule for distribution of settlement monies). Here, the inquiry focuses upon whether the language of Mr. Franks' plan is both unambiguous and broad enough to encompass attorneys' fees.

ERISA plan provisions must be interpreted as they are likely to be "understood by the *average plan participant." Walker,* 159 F.3d at 940 (citing 29 U.S.C. § 1022(a)(emphasis added)). Congress expressly provided ERISA plans be "written in a manner calculated to be understood by the average plan participant." *Id.* Plans must be "couched in ordinary conversational terms, understandable by the average reasonable employee, and not in verbose 'legalese' or 'insurance speak.'" *Whitehurst,* 102 F.3d at 1370; *see also Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1452 n. 1 (5th Cir.1995)(courts must interpret ERISA "in an ordinary and popular sense as would a person of average intelligence and experience"). After all, an ERISA plan and its authors are in a far superior bargaining position than the individual consumer.

Under this standard, Mr. Franks' plan is both unambiguous and broad enough to encompass attorneys' fees. The plan provides: "[A] reasonable share of fees and costs incurred to obtain such payments may be deducted from the reimbursements to be made to PruCare." The plan also provides: "A fair share of the legal costs borne by the claimant needed to obtain the payments described ... may be subtracted from the repayment" to Prudential. Finally, the plan states: "[A] reasonable portion of the total costs of recovery attributable to the recovery of the medical or loss of time expenses may be deducted by the injured party from any amounts repaid to" Prudential. A layperson audience would read this to provide for the deduction of Mr. Franks' attorneys' fees from any reimbursement owed Prudential. Nonetheless, a layperson would not read this to allow Mr. Franks a windfall by deducting attorneys' fees in all instances. For example, he cannot not include those fees which were not fair or reasonable or attributable to the recovery of his medical and/or loss of time expenses. Thus, the plain language reading of the plan indicates, in the event of a recovery from a third-party tortfeasor, Mr. Franks may be able to offset attorneys' fees from any subroga-

tion/reimbursement to Prudential for medical expenses related to his accident.

If Prudential wants to rely upon "reasonable" language for reimbursement, common sense and fairness require Prudential to be reasonable with reference to the legal efforts which created the subrogation fund. Prudential should not invoke language which is favorable to reimbursement, but ignore the attorneys' fees provisions. To allow Prudential to do so would create a contract of adhesion. *See Tarallo–Brennan v. Smith Barney, Harris Upham & Co.*, No. 97 CIV 7527(DAB), 1999 WL 294873, at *3 (S.D.N.Y. May 10, 1999)(plan limitation consistent with ERISA is adhesion contract where deceptive language is used and there exists unequal bargaining power between parties). It would also violate this Court's Tain't Right Doctrine.

The motion to dismiss is denied as to Mr. Franks' claim for common fund attorneys' fees. It appears the proper procedure would be for Mr. Franks to submit an affidavit setting forth the total recovery he received and the contingency fee contract with his attorney. Mr. Franks should also state that but for his pursuit of the third-party claim this recovery would not have occurred and, therefore, Mr. Franks is entitled to have the subrogation/reimbursement amount reduced by that pro-rata amount of attorneys' fees.

### IX. OPTIONS TO APPEAL

The Court is of the opinion this Order involves controlling questions of law as to which there are substantial grounds for difference of opinion and an immediate appeal from this Order may materially advance the ultimate termination of this litigation. *See* 28 U.S.C. § 1292 (governing interlocutory appeals). If plaintiffs and/or defendants choose to do so, the Court will look favorably upon a properly and timely

filed motion(s) for leave to file an interlocutory appeal. *See* Fed. R.App. P. 5 (governing requests for permission to appeal by permission); *see also* Fed. R.App. 8 (governing requests for stay pending appeal).

### X. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Renewed Motion to Dismiss (marked "Received" by the District Clerk on May 2, 2000) is GRANTED IN PART and DENIED IN PART such that Mr. Franks' claims against defendants are dismissed, with the exception of the claim for common fund attorney' fees, which remains pending for disposition. This Order is subject to appeal as set forth above.

It is so ORDERED.