Kimberly BRUUN; Ashley R. Emanis, on behalf of themselves and all other similarly situated persons Appellant,

v.

PRUDENTIAL HEALTH CARE PLAN, INC., a Texas Corporation aka Prucare, The Prudential Insurance Company of America dba Prucare; Aetna, Inc; Trover Solutions, Inc., a Delaware Corporation Appellee.

No. 03–4459.

United States Court of Appeals, Third Circuit.

Argued Sept. 23, 2004.

Decided Feb. 16, 2005.

David A. McKay, (Argued), Herman Mathis Casey Kitchens & Gerel, Atlanta, Georgia, for Appellants Bruun.

Neal S. Manne (Argued), J. Hoke Peacock, III, Carolyn P. Courville, Susman Godfrey L.L.P., Houston, Texas, for Appellees Prudential Health Care.

Before McKEE, ALDISERT and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Kimberly Brunn and Ashley Emanis (Appellants) appeal from a dismissal of their complaint by the district court under Rule 12(b)(6) of the Federal Rules Civil Procedure. Under the Rule, the court must accept as true all well-pleaded allegations of the complaint, and construe them in the light most favorable to the plaintiff; dismissal may result only if the plaintiff alleges no set of facts which, if proved, would entitle him to relief. *Labov v. Lalley*, 809 F.2d 220, 221 (3d Cir.1987.)

Because we write only for the parties who are familiar with the facts and the proceedings below, our discussion will be limited.

Although Appellants present many contentions, we will discuss what we consider to be the two major issues that control our disposition, to-wit: (1) whether the Federal Health Maintenance Organization Act (HMO Act), 42 U.S.C. § 300e (2000), permits PruCare to subrogate recoveries re-

ceived from third parties; and (2) whether PruCare was properly entitled reimbursement of the reasonable cash value of benefits instead of the actual costs paid by PruCare. We begin with the language of the relevant portion of the Plan.

## I.

The Plan contains a Right of Reimbursement under the Group Health Care Coverage:

A ..... Each covered person agrees to reimburse PruCare as described in these provisions in return for PruCare's providing services, supplies or benefits for a covered person's sickness or injury;

1) for which another person, corporation or other entity (called third party below) is considered responsible; or

2) that arises out of or in the course of any work for wage or profit and is covered by any worker's compensation law, occupational disease law or similar law.

Immediately upon receipt of any payments or collection of damages (as a settlement, award, judgment or in any other way) with respect to such sickness or injury, the covered person involved, or if incapable, that person's legal representative) will reimburse PruCare for:

a) the reasonable cash value of any benefits provided directly by PruCare as the result of the sickness or injury; and

b) the actual cost paid by PruCare for medical services required by the covered person as the result of the sickness or injury.

(App. at 128.)

The Plan defines "reasonable cash value" as "the cash value assigned to a service or supply provided ordered or authorized by a participating health provider, as determined by PruCare." (App. at 111.)

## II.

Appellants contend that PruCare violated the terms of the ERISA Plan in recovering reimbursement from its members when third parties were liable for medical expenses paid by PruCare. Appellants contend that the HMO Act provides that no HMO can seek subrogation or reimbursement from a third party whether for reasonable value or any amount. In rejecting this contention, the district court reasoned:

> [t]he HMO Act provision regarding collections from participants reads in part: "The requirements for this paragraph respecting the basic health services payment shall not apply to the provision of basic health services to a member for an illness or injury for which the member is entitled to benefits under a workman's compensation law or an insurance policy but only to the extent such benefits apply to such services." 42 U.S.C. § 300e(b)(1). Thus, the HMO specifically accepts its general prepayment requirement (and implicitly allows for subrogation and reimbursement) when a participant's injury or sickness entitles them to benefits under an insurance policy. The HMO Act does not require the participants be insured under that policy, nor does it restrict the application of the exception to coordination of benefits.

(App. at 19–20.)

Although there were differences between the Senate and House versions of the Act, the House Amendment prevailed and the legislative history left no doubt about its application to third-party insurers:

> [t]he reported bill, while continuing to require that basic health service be provided would allow an HMO to seek reimbursements for services provided to a member who is entitled to benefits under a workmen's compensation law or an insurance policy. The Amendment seeks to assure that financial responsibility for work related illness or injury will be borne by workmen's compensation programs and financial responsibility for other illnesses and injuries covered by an insurance policy will be borne by those policies ....under the Amendment the HMO would provide the health care services and receive payment from the workmen's compensation carrier, employer or other third party responsible for payment.

H.R.Rep. No. 95–1479 at 52–53 (1978).

We agree with this interpretation.

## III.

■ The district court correctly ruled, based on persuasive authority from other courts, that PruCare did not violate its ERISA fiduciary duty by requiring Reasonable Cash Value reimbursement. *See e.g., Ince v. Aetna Health Management*, 173 F.3d 672, 676 (8th Cir.1999) (holding that ERISA allows an HMO to recover reimbursement for the reasonable value of services). The district court erred, however, when it ruled that "the Plan documents clearly allow for reimbursement of the 'Reasonable Cash Value' for any service provided by a 'Participating Health Care Provider'." We are convinced that the Plan's language is ambiguous and that extrinsic evidence is required to resolve this ambiguity.

## IV.

Appellees refer us to the teachings of *Franks v. Prudential Health Care Plan*, 164 F.Supp.2d 865 (W.D.Tex.2001), where the court interpreted the Reimbursement Clause of this very same plan. The court in *Franks* was convinced that the clause allowed PruCare to require Reasonable Cash Value reimbursement for services

rendered by Preferred Health Care Providers. The *Franks* court was not, however, convinced of this on a motion to dismiss. As the Appellee admits in its brief, the court allowed plaintiffs to present evidence to support their reading of "provided directly by PruCare." Further, we conclude that the analysis in *Franks* is confused. In part of the opinion the court holds that "Mr. Frank's ERISA plan gives Prudential the right to recover the reasonable value to the medical services it provided to Mr. Franks in the event he recovers from a third-party tortfeasor." *Id.* at 882. In another place the court states "defendants have shown they recovered from Mr. Franks the amount Prudential actually paid to its providers." *Id.* at 885. We do not consider this case persuasive.

The interpretation of the Reimbursement Clause accepted by the district court and urged by the Appellee's also causes considerable confusion about when subsection (b) would apply to limit PruCare to reimbursement based on actual costs paid. If we accept Appellee's explanation that services rendered by PruCare's Preferred Health Care Providers are also provided directly by PruCare, it is difficult to conceptualize the circumstances in which PruCare would have to pay for "medical services required." Under the district court's and Appellee's interpretation, it seems that any medical care covered by PruCare's HMO would be provided directly by PruCare and come under the rubric of subsection (a). This interpretation seems to render subsection (b) superfluous.

Yet interpreting "provided directly by PruCare" in the manner proposed by the Appellants leads to a whole host of problems. The term "Reasonable Cash Value" is defined in the plan as "[t]he cash value assigned to a service or supply provided, ordered or authorized by a Participating Health Care Provider, as determined by PruCare." It would seem based on this definition, that PruCare could use Reasonable Cash Value reimbursement for all services provided by Participating Health Care Providers.

Also, because PruCare does not normally (or perhaps ever) provide services directly, under Appellants' proposed meaning of that term subsection (a), which explains when the Reasonable Cash Value standard is to be used, would seem to be rendered superfluous.

## V.

■ Without the necessity of adopting entire argument of Appellants on this particular issue, we have concluded that when read together, subsections (a) Reasonable Cash Value and (b) actual cash paid are hopelessly ambiguous and require extrinsic evidence in order to be interpreted properly. The Plan contains no direct or indirect guideposts to determine which of the provisions, and therefore which standard of reimbursement, should be applied in a given set of circumstances. According to the Plan, a Reasonable Cash Value standard of reimbursement is used when a benefit is "provided directly by PruCare as a result of sickness or injury." On the other hand, the actual cost standard for reimbursement is used for "medical services required by the covered person." The only distinguishing factor between these two standards is whether the benefits are "provided directly by PruCare" and the Plan is unhelpful in determining what "provided directly by PruCare" means. We find no explanation in the Plan explaining when the actual cost will not be used in favor of Reasonable Cash Value. Accordingly, without extrinsic evidence, any interpretation is little more than guesswork. And this will not do.

We have considered all contentions presented by the parties, but in light of the

foregoing we conclude that no further discussion is necessary.

## VI.

Appellants also raised a series of arguments which we treat summarily.

They argue that the Reimbursement Clause applies only when PruCare has mistakenly provided or paid for "services, supplies or other benefits" that should not have been covered by the Plan. Read in context in away that avoids rendering the majority of the Clause meaningless, however, the language of the Reimbursement Clause clearly allows PruCare to require reimbursement of payments made by third-party insurers to PruCare Members for health care related to an injury for which the third-party is considered responsible.

Appellants next assert that the Plan's definition of Reasonable Cash Value imposes a duty on PruCare to make an independent valuation and that they are not free to simply accept the amount billed by their providers. The Plan documents allow PruCare's Preferred Health Care Providers to assign the cash value for their services and Appellant's argument on this issue is simply not supported by the text of the Plan.

Finally, Appellants contend that allowing PruCare to collect both reimbursement and premiums violates ERISA and an implied term of the Plan. We find that PruCare's practice of charging premiums as well as requiring reimbursement is explicitly allowed by the Plan Documents and not in violation of ERISA fiduciary duties

\*     \*     \*     \*     \*     \*

Accordingly, even though we agree with the district court that the Reasonable Cash Value reimbursement standard is permitted under ERISA, we cannot agree that it was clearly permitted by the terms of the Plan in this case. We agree with the Appellant that the words "provided directly by PruCare" in the Reimbursement Clause create an ambiguity about when the Reasonable Cash Value standard of reimbursement is allowed. We therefore conclude that dismissal of this complaint under Rule 12(b)(6) was not appropriate.

The judgment of the district court will be reversed and the proceedings remanded for the purpose of receiving relevant evidence from the parties.